MUNICIPAL LIGHT COMMISSION OF TAUNTON *vs.* STATE EMPLOYEES' GROUP INSURANCE COMMISSION.

Suffolk.    May 9, 1962. — June 11, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Municipal Corporations,* Department, District, Group insurance. *Taunton. Words,* "District," "Public unit."

A municipal light board or commission is, in certain aspects, a municipal department.    [536]

In G. L. c. 32B, § 2 (c), as appearing in St. 1956, c. 730, § 1, defining district as "any water, sewer, light, fire, veterans' services or other improvement district or public unit created within one or more political subdivisions of the commonwealth for the purpose of providing public services or conveniences," the immediate context of the phrase "other . . . public unit" implies a limitation of public units to units which are like districts.    [536–537]

The municipal light commission of Taunton, established by Sp. St. 1919, c. 150, is not a "district" within G. L. c. 32B, § 2 (c), as appearing in St. 1956, c. 730, § 1, and is not entitled to accept the provisions of c. 32B and to purchase thereunder group insurance covering its employees.    [534, 537, 539]

BILL IN EQUITY filed in the Superior Court on November 7, 1961.

The suit was reported by *Coddaire,* J.

*Philip M. Cronin* for the plaintiffs.

*Lawrence E. Cooke,* Assistant Attorney General (*Leo Sontag,* Assistant Attorney General, *& William A. Burke* with him), for the defendant.

WHITTEMORE, J.   The plaintiffs as the members of the Municipal Light Commission of Taunton (Taunton commission) seek a declaratory decree to determine that it is a "public unit" and hence a "district" within the meaning of G. L. c. 32B, § 2 (c), as appearing in St. 1956, c. 730, § 1, and hence entitled to accept the provisions of that chapter and to purchase policies of group life and accidental death and dismemberment insurance covering its employees and group general or blanket insurance providing hospital, surgical, and medical benefits covering its employees and their dependents.

The defendants are the members of the State employees' group insurance commission whose duty it is under G. L. c. 32B, § 3, as amended through St. 1961, c. 334, § 1, to review agreements or contracts of insurance made under the chapter to determine compliance with § 11, as amended through St. 1960, c. 337, § 4.   The defendants have declined to recognize contracts of insurance submitted by the plaintiffs on the ground that the Taunton commission is in effect a department of the city and the city has not adopted c. 32B as required by § 10 in order to make it effective therein.

The judge in the Superior Court found the facts which present the issue and reported the proceeding without decision.

The Taunton commission is founded in Sp. St. 1919, c. 150, which provides (§ 1) for the appointment of its three members by the mayor, gives it the power and duties "relative to the municipal lighting plant . . . which are now conferred or imposed by law upon the mayor" and "in addition all the powers and duties now conferred or imposed by law upon municipal light boards in towns. . . .   [§ 2]   The commission shall establish the office of manager and fix his salary."

For the control of the commission over the manager in respect of the manager's statutory duties see G. L. c. 164, § 55, § 56 as amended through St. 1958, c. 160; *Commonwealth* v. *Oliver*, 342 Mass. 82, 84–85.

1.   In *Municipal Light Commn. of Taunton* v. *Taunton*, 323 Mass. 79, 84, we held that the commission is not subject

to city ordinances governing the awarding of contracts and fixing of salaries inasmuch as the management of the affairs of the commission is exclusively in its members subject to the provisions of G. L. c. 164, as amended.

In *Commonwealth* v. *Oliver,* 342 Mass. 82, 83–84, we held that although the earlier decision had established that the commissioners were not agents of the city, and were public officers under legislative mandate, they are, nevertheless, officers of the city for purposes of a criminal statute.

The provisions of G. L. c. 164 state certain duties of a municipal light board and of the manager appointed by it and certain requirements in respect of funds and accounts which resemble duties of, and requirements in respect of, a municipal department.   By § 56 all receipts are paid to the municipal treasurer; all accounts are "subject to the inspection of the city auditor or officer having similar duties, and in towns they shall be subject to the inspection of the selectmen." The inspecting officer or officers "may require any person presenting . . . an account or claim against such plant" to make oath as to its accuracy.   Such inspecting officer or officers "shall approve the payment of all bills or pay rolls of such plants . . . and may disallow . . . any claim as fraudulent, unlawful or excessive"; and if disallowed the treasurer may not pay it.   "The manager shall at any time, when required . . ., make a statement . . . of his doings . . . and of the indebtedness of the town in his *department*" (emphasis supplied).

By § 57A any municipality having a municipal light plant "may appropriate money for the maintenance and operation of such plant, specifying that the same shall be taken from the receipts of the *department* [emphasis supplied]; and where such appropriations are made, the city or town treasurer may, in advance of the collection of said receipts, pay bills on account of the said appropriations, and any sum so advanced shall be repaid . . . from such receipts . . . and shall be applied as reimbursement to the city or town, or to the payment of any temporary loan made by the city or town in anticipation of revenue of that year."

536                                      344 Mass. 533

Municipal Light Commn. of Taunton v. State Employees' Group Ins. Commn.

Municipal lighting plants are municipal property and a "debt for plant" is a municipal debt. G. L. c. 164, §§ 34, 40. See also § 64. The General Court has twice since Sp. St. 1919, c. 150, expressly recognized the municipal status of the Taunton commission and of the property of the Taunton plant. St. 1934, c. 196, § 1, "The city of Taunton acting through its municipal light commission, may sell steam generated by its municipal lighting plant . . .," St. 1955, c. 201, § 1, "For the purposes of providing funds for extending or enlarging its electric plant the city of Taunton may borrow . . . ."

It is unimportant if, as we do not suggest, some of the provisions of G. L. c. 164, applicable to municipal light boards and their properties, may not (because of Sp. St. 1919, c. 150) be applicable to the Taunton commission and its properties. It is plain from the foregoing that a municipal light board or commission is, in certain aspects, a municipal department, recognized and, indeed in two instances, characterized as such by the General Court.

2. General Laws c. 32B provides in § 3, as amended by St. 1961, c. 334, § 1, that upon acceptance of the chapter the appropriate public authority of the governmental unit, after consultation with an advisory committee consisting of five persons to be elected or appointed and from organizations of the employees affected, "shall negotiate with and purchase, on such terms as it deems to be in the best interest of the governmental unit and its employees . . ." contracts or agreements of insurance in the specified categories.

Section 2 defines, in part, as follows: "(a) 'Appropriate public authority,' as to a county, the county commissioners; as to a city, the mayor; as to a town, the selectmen; and as to a district the governing board thereof. . . . (c) *'District,' any water, sewer, light, fire, veterans' services or other improvement district or public unit created within one or more political subdivisions of the commonwealth for the purpose of providing public services or conveniences* [emphasis supplied]. . . . (f) 'Governmental unit,' any political subdivision of the commonwealth. (g) 'Political subdivision,' any county, city, town or district."

344 Mass. 533                                      537

Municipal Light Commn. of Taunton *v.* State Employees' Group Ins. Commn.

We agree with the defendants that the Taunton commission is not within the definition of "district" notwithstanding that, as the plaintiffs contend, it has certain aspects of a "public unit created within one . . . [of the] political subdivisions of the commonwealth."

The meaning of "other . . . public unit" is to be determined in its context. The immediate context of the phrase in definition (c) implies a limitation to public units which are like districts. This is reinforced by the other sections of the chapter next set out.

Section 9A, inserted by St. 1959, c. 595: "A county by vote of the county commissioners, a city . . . [by council vote, approved by the mayor except in Plan D or E cities] and a district by vote of the district at a district meeting, may provide that it will pay one half of the amount of the premium to be paid by a retired employee . . . . A town may provide for such payment . . . [by vote on the official ballot]."

Section 10 (prior to St. 1962, c. 150). "This chapter may be accepted in a county by vote of the county commissioners; in a city by vote of the city council, approved by the mayor; in a district by vote of the district at a district meeting; and in a town . . . [on the official ballot]."

Section 10 (as amended through St. 1962, c. 150) "accepted . . . except as hereinafter provided, by vote of the registered voters of the district at a district meeting; in a regional school district by vote of the regional district school committee; in a veterans' services district by vote of the district board; in a welfare district by vote of the district welfare committee."

Section 3, inserted by St. 1956, c. 730, § 1: "If a town or district accepts the provisions of this chapter . . . but fails to appropriate the funds necessary to implement said provisions, the selectmen, in the case of a town, or the prudential committee or district commissioners, in the case of a district, shall certify the cost to the town or district, as the case may be, in carrying out the provisions of this chapter to the board of assessors who shall include the

amount so certified in the determination of the tax rate of that year. . . ."

There are, of course, subordinate agencies of government within the Commonwealth other than counties, cities, towns, and districts named as such. But express provision is made for at least some of these public units in c. 32A. The title of chapter 32A indicates that it makes provision similar to that in c. 32B but for "Persons in the service of the commonwealth." Section 2, of c. 32A, as amended through St. 1960, c. 534, however, defines "Employee" to include, inter alia, "a person who is an employee of a mosquito control project, a local housing authority or a redevelopment authority."

It is objected that it is inconsistent with the authority of the Taunton commission over its employees given by Sp. St. 1919, c. 150, and recognized in our decisions, to so construe c. 32B that decision as to availability of insurance under that chapter depends upon other municipal action. But the General Court was entirely free to limit by c. 32B the authority given by the special statute.

In certain aspects the Taunton commission is the employer of the employees under it. But the words "employer" and "employee" as used in c. 32B are broadly used. "Employer" by § 2 (e) is "the governmental unit" and the definition of "Employee" in § 2 (d), as amended through St. 1958, c. 580, includes not only "any person in the service of a governmental unit . . ." but also "any employee of a free public library maintained in a city or town to the support of which said city or town annually contributes not less than one half of the cost." See also the definitions in c. 32A.

It is insignificant that the city council may not fix the salaries of Taunton commission employees. Chapter 32B, as we construe it, gives the city council the power to determine whether such employees, with employees of other city departments, may have the benefit of that chapter. Even if this resulted in forcing insurance upon such employees, as in effect a part of their compensation, the General Court

could provide that this be done by the city council. Chapter 32B is, however, not compulsory. Section 4 provides that "any employee desiring not to be so insured shall . . . give written notice . . . ."

The general intent shown by c. 32A and c. 32B is to gather employees in large groups. See, in addition to sections already discussed, c. 32B, §§ 11 and 12.

Perhaps there are "public units" not like the conventional district in their constitution and government which by virtue of c. 32B, § 2 (c), may act independently under that chapter. We need not decide that. It is enough that the definition of "district" does not, in context, include such a semi independent city department as that which is under the direction and control of the Taunton commission.

3. A decree is to enter in the Superior Court in accordance with this opinion.

*So ordered.*