MUNICIPAL LIGHT COMMISSION OF PEABODY & another *vs.*
CITY OF PEABODY & others.

Essex.    November 6, 1964. — December 11, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Municipal Corporations,* Municipal light plant, Municipal finance, Accounting.  *Peabody.*

The expenditure of money available for the expenses of the municipal
    lighting plant in Peabody operated under St. 1951, c. 286, is to be
    determined by the municipal light commission and plant manager in
    accordance with G. L. c. 164, and is not subject to the controls over
    municipal departments provided in G. L. c. 44 nor limited by c. 44 to the
    amounts appropriated for the plant in the city budgets voted by the
    city council.  [270–272]
The city auditor of Peabody cannot require of the city's municipal light-
    ing plant, operated under St. 1951, c. 286, the accounting classifications
    applicable to other city departments if they are inconsistent with the
    classifications prescribed for the plant pursuant to G. L. c. 164, § 63.
    [272–273]
Appropriations by the city of Peabody for its municipal lighting plant
    operated under St. 1951, c. 286, should be deemed to be appropriations
    under G. L. c. 164, § 57A, so far as they exceed the amounts which the
    city is required by § 57 to appropriate.  [273]

BILL IN EQUITY filed in the Superior Court on March 31,
1964, for declaratory relief.

The suit was reported on agreed facts by *Chmielinski,* J.,
without decision.

*Francis B. Gerry* for the plaintiffs.

*Abraham Ankeles (M. Irving Herbster,* City Solicitor,
with him) for the defendants.

WHITTEMORE, J.   This report from the Superior Court
presents the issues of the respective powers and duties of
the municipal light commission of Peabody and the mana-
ger of municipal lighting on the one hand and the mayor
and city council on the other in respect of annual appropri-
ations for the operation of the municipal light department,

and also the duties of the city auditor in respect of the accounts of the department and the payment of its bills.

The municipal light commission was established by St. 1951, c. 286, duly accepted by voters of the city under § 4 of the statute, on November 6, 1951. The statute (§ 1) gives the commission the powers and duties "relative to the municipal lighting plant of said city which are now conferred or imposed by law upon the mayor, and . . . in addition all the powers and duties now conferred or imposed by law upon municipal light boards in cities."[1] Additionally it specifies (§ 3) that "[e]xcept as otherwise provided herein, all provisions of law relative to municipal lighting plants in cities and to the management and conduct thereof shall apply to the city of Peabody." The general provisions relative to municipal light plants are found in G. L. c. 164, §§ 34–69A. For original enactment see St. 1891, c. 370.

1. General Laws c. 164 provides for the operation of a commercial business by a manager under local control. G. L. c. 164, §§ 55, 56. This control in Peabody has been placed in the commission. See *Whitney* v. *Mayor of Holyoke,* 272 Mass. 116, 119; *Commonwealth* v. *Oliver,* 342 Mass. 82, 85. The statute further provides for general supervision of the municipal lighting business by the Department of Public Utilities.[2]

The statute also provides for the operation of the business in certain respects as a municipal department. *Municipal Light Commn. of Taunton* v. *State Employees' Group Ins. Commn.* 344 Mass. 533, 535–536. The city contends that, therefore, the controls over municipal departments

---

[1] General Laws c. 164, § 55, provides for a municipal light board in towns.

[2] Section 63 requires annual returns to the Department and that the "books, accounts and returns shall be made and kept in a form prescribed by the department." The books and accounts are subject to the Department's inspection, and it may require "any statement or information . . . relative to the condition, management and operation of said business." Controls of the Department in respect of depreciation and the "depreciation fund" are set out in § 57. See also § 58 (cost of plant and production cost), § 59 (certification of prices to the department), and § 60 (power to order product to be furnished a consumer).

provided in G. L. c. 44 are also applicable. In particular the contention is that the commission and the manager may expend in any year only up to the dollar amount appropriated by the council in a budget submitted by the mayor. There is, we think, as will appear below, a reason for an annual appropriation but it does not follow that the mayor and the council have power to specify, to reduce, or to change the commission's budget.

The "manager of municipal lighting . . . under the direction and control of the . . . [commission has] full charge of the operation and management of the plant, the manufacture and distribution of gas or electricity, the purchase of supplies, the employment of attorneys and of agents and servants, the method, time, price, quantity and quality of the supply, the collection of bills, and the keeping of accounts." G. L. c. 164, § 56. This in terms is an unrestricted power in the manager and the commission. There is in this section an implication that their determination as to what should be expended for the efficient operation of the business is not subject to change by other public officers or the legislative department. See *Municipal Light Commn. of Taunton* v. *Taunton,* 323 Mass. 79 (the light commission was not subject to ordinances of the city governing the awarding of contracts and the fixing of salaries).

The annual budget for the municipal light department as well as the funds to meet it are provided for in §§ 57 and 58. Section 57 provides: "At the beginning of each fiscal year, the manager . . . shall furnish to the . . . [commission] an estimate of the income from sales of gas and electricity to private consumers during the ensuing fiscal year, and of the *expense of the plant* during said year, meaning the gross expenses of operation, maintenance and repair, the interest on the bonds, notes or certificates of indebtedness issued to pay for the plant, an amount for depreciation equal to three per cent of the cost of the plant exclusive of land and any water power appurtenant thereto, or such smaller or larger amount as the department may approve, the requirements of the sinking fund or debt incurred for

the plant, and the loss, if any, in the operation of the plant during the preceding year, and of the cost, as defined in section fifty-eight, of the gas and electricity to be used by the town. *The town* [or city, see G. L. c. 4, § 7[3]] *shall include in its annual appropriations and in the tax levy not less than the estimated cost of the gas and electricity to be used by the town* as above defined and estimated. . . . The income from sales *and the money appropriated as aforesaid* shall be used to pay the annual *expense of the plant,* defined as above . . . except that no part of the sum therein included for depreciation shall be used for any other purpose than renewals in excess of ordinary repairs, extensions, reconstruction, enlargements and additions"[4] (emphasis supplied).

Section 58 provides for fixed schedules of prices for gas and electricity, changed not oftener than once in three months. "No price . . . shall, without the written consent of the department, be fixed at less than production cost as it may be defined from time to time by order of the department. Such schedules of prices shall be fixed to yield not

---

[3] See also the later provision of § 57 that the "depreciation fund shall be kept and managed by the *town* treasurer as a separate fund, subject to appropriation by the *city* council or selectmen or municipal light board, if any, . . ." (emphasis supplied).

[4] Section 57 provides further: "The surplus, if any, of said annual allowances for depreciation after making the above payments shall be kept as a separate fund and used for renewals other than ordinary repairs, extensions, reconstruction, enlargements and additions in succeeding years; and no debt shall be incurred under section forty for any extension, reconstruction or enlargements of the plant in excess of the amount needed therefor in addition to the amount then on hand in said depreciation fund. Said depreciation fund shall be kept and managed by the town treasurer as a separate fund, subject to appropriation by the city council or selectmen or municipal light board, if any, for the foregoing purpose. Upon his own initiative or upon the request of the city council, selectmen or municipal light board, the treasurer shall invest or deposit the same as permitted by section fifty-five A of chapter forty-four, and any income thereon shall be credited to the depreciation fund. So much of said fund as the department may from time to time approve may also be used to pay notes, bonds or certificates of indebtedness issued to pay for the cost of reconstruction or renewals in excess of ordinary repairs, when such notes, bonds or certificates of indebtedness become due. All appropriations for the plant shall be either for the annual expense defined as above, or for extensions, reconstruction, enlargements or additions; and no appropriation shall be used for any purpose other than that stated in the vote making the same. No bonds, notes or certificates of indebtedness shall be issued by a town for the annual expenses as defined in this section."

more than eight per cent per annum on the cost of the plant, as it may be determined from time to time by order of the department, after the payment of all operating expenses, interest on the outstanding debt, the requirements of the serial debt or sinking fund established to meet said debt, and also depreciation of the plant reckoned as provided in section fifty-seven, and losses; but any losses exceeding three per cent of the investment in the plant may be charged in succeeding years at not more than three per cent per annum.''

It is to be noted also that § 57 contemplates that expenditures for items payable from depreciation accounts be under the control of the manager and the commission. Indeed, the section expressly provides (fn. 3) that the depreciation fund is ''subject to appropriation by the . . . municipal light board, if any.''

There is no question, of course, of the power of the municipality under § 57 to make appropriations, if it wishes to do so, from other than municipal light department funds for all categories of expenditures by the light department.[5] But §§ 57 and 58 confirm the implication of § 56 that the municipal light department shall have in each fiscal year the funds to meet ''the expense of the plant'' as estimated by the manager at the beginning of the year, and that, within the limits of the business operation as defined by the statute, the mayor and city council have no restrictive powers.

Section 56 requires that all moneys received ''in connection with the operation of the plant, for the sale of gas or electricity or otherwise, shall be paid to the city or town treasurer.'' This is consistent with G. L. c. 44, § 53: ''All moneys received by any city . . . officer or department, . . . shall be paid . . . upon their receipt into the city . . . treasury.'' Section 53, however, further provides that

---

[5] It is ''*not less than* the estimated cost of the gas and electricity to be used by the town'' (emphasis supplied) that *must* be appropriated and included in the tax levy. And see the next to the last sentence of § 57 (fn. 4): ''All appropriations for the plant shall be either for the annual expense defined as above, or for extensions . . . .''

"[a]ny sums so paid into the city . . . treasury shall not later be used by such officer or department without a specific appropriation thereof . . . ." We assume that this mandate to the city treasurer is operative in respect of the funds of the electric light department. But it does not necessarily follow that the appropriation of "income from sales" of the light department can only be made under the procedures of other sections of c. 44, or that the amount of the appropriation is subject to the control of the mayor and the council as in the case of regular municipal appropriations.

The general intention of c. 44 that municipal finances be carefully regulated and be uniform is served, as to municipal light boards, by the provisions of c. 164 placing such boards under the control of the Department of Public Utilities, and the specific provisions of c. 164 are inconsistent with the application of c. 44. Section 57, as noted, makes express distinction between the funds available to the light department as "income from sales" and funds available from appropriations from the tax levy.

Section 57A of c. 164, inserted by St. 1922, c. 184, throws light on the intent of § 57 and confirms that the operation of the municipal light plant is not dependent upon such appropriations by the municipality. "Any city or town having a municipal light plant *may* appropriate money for the maintenance and operation of such plant, specifying that the same shall be taken from the receipts of the department; and *where such appropriations are made,* the city or town treasurer may, in advance of the collection of said receipts, pay bills on account of the said appropriations, and any sum so advanced shall be repaid to the city or town from such receipts, when collected, and shall be applied as reimbursement to the city or town, or to the payment of any temporary loan made by the city or town in anticipation of revenue of that year" (emphasis supplied). The enactment of this provision may have been induced by the inability of municipal light departments, prior to its enactment, to pay bills in any year except to the extent of income on hand from that year's sales.

We conclude therefore that the appropriations necessary to authorize the treasurer to use light department funds for "expense of the plant" may be made by vote of the commission on the budget submitted by the manager. Nevertheless, it is advisable that the city's budget incorporate the budget of this department of the city. In the light of c. 164, §§ 57 and 57A, and of c. 44, § 53, an orderly procedure, that should give maximum flexibility in respect of paying the bills of the light department, would be for the mayor to recommend and the council to appropriate in each year the "income from sales" in that year as well as the required item of "the estimated cost of the gas and electricity" to be used by the city, the whole to be expended by the manager under the direction and control of the commission for the "expense of the plant" for the fiscal year as defined in c. 164, § 57.[6]

2. The duties of the city auditor in respect of the commission's accounts are specified by c. 164, § 56. "All accounts rendered to or kept in the gas or electric plant of any city shall be subject to the inspection of the city auditor . . . . The auditor . . . may require any person presenting for settlement an account or claim against such plant to make oath before him . . . , in such form as he . . . may prescribe, as to the accuracy of such account or claim. . . . The auditor . . . shall approve the payment of all bills or pay rolls of such plants before they are paid by the treasurer, and may disallow and refuse to approve for payment, in whole or in part, any claim as fraudulent, unlawful or excessive; and in that case the auditor . . . shall file with the city . . . treasurer a written statement of the reasons for the refusal; and the treasurer shall not pay any claim or bill so disallowed."

Nothing shown us in this record suggests a basis for the auditor's requiring a breakdown of the accounts of the light commission in accordance with the classifications operative

---

[6] The city counsel, in consultation with the Department, and possibly other municipalities having municipal light plants, could determine other provisions customarily, or optionally, included in the annual appropriation vote.

in Peabody for the accounts of other city departments. The manager should, of course, furnish the auditor with a statement of the classifications under which he operates. See c. 164, § 63. He should make available to the auditor a copy of his budget. We assume that the manager would be coöperative in the event that the auditor should indicate certain nonburdensome adjustments in the detail of the commission's accounting or procedures that would facilitate the work of the auditor's office and which would be entirely consistent with the requirements of the Department.

3. A final decree shall enter in the Superior Court declaring: (1) The management and fiscal operation of the municipal light department of Peabody are vested in the commission and the manager of the plant under St. 1951, c. 286, and G. L. c. 164, and the budget of the light department is to be determined in accordance with c. 164 and not by the procedures of c. 44; any appropriations under the procedures of c. 44 if less in amount than the budget of the light department requires shall not limit the expenditures of the department; so far, if at all, as such appropriations are in excess of amounts that the city is required to appropriate by c. 164, § 57, they shall be deemed appropriations under c. 164, § 57A. (2) The books of account of the commission are to be kept, and accounting procedures of the light department are to be, as prescribed by the Department of Public Utilities, and the commission and its manager are not to be required to conform to other procedures.

*So ordered.*