363 Mass. 433 433

Board of Gas & Elec. Commrs. of Middleborough v. Dept. of Pub. Util.

BOARD OF GAS AND ELECTRIC COMMISSIONERS OF
MIDDLEBOROUGH *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk. March 7, 1973. — April 3, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Public Utilities. Municipal Corporations*, Municipal lighting plant.

G. L. c. 164, § 94, does not authorize the Department of Public Utilities
to suspend, pending investigation, rate schedules fixed by a
municipal light board under G. L. c. 164, §§ 58 and 59. [436–438]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on April 15, 1971.

The case was reserved and reported by *Quirico, J.*

*Nathan S. Paven* for the petitioner.

*Charles M. Furcolo*, Assistant Attorney General, for
the Department of Public Utilities.

QUIRICO, J. This is an appeal by the board of gas and
electric commissioners of Middleborough (board) under
G. L. c. 25, § 5, as amended by St. 1956, c. 190, from an
order of the Department of Public Utilities (Depart-
ment) suspending the operation of certain rates and
charges filed by the board pending investigation by the
Department as to their propriety. The appeal was en-
tered in the county court and was reserved and reported
by the single justice on the petition for appeal, the rate
schedules involved, the orders of the Department thereon,
and a statement of agreed facts constituting a case
stated. The basic question of law presented by the appeal
is whether that part of G. L. c. 164, § 94, as amended
through St. 1963, c. 615, § 1, which authorizes the De-
partment to suspend, for a period not exceeding ten
months pending investigation, schedules of rates, prices
or charges filed by gas and electric companies also au-
thorizes the department to take such action on schedules

434 363 Mass. 433

Board of Gas & Elec. Commrs. of Middleborough v. Dept. of Pub. Util.

filed by a municipal light board under G. L. c. 164, §§ 58 and 59 (both as amended).

We state the facts pertinent to this appeal. The board was originally established and authorized to distribute electricity for use by the inhabitants of the town of Middleborough. See G. L. c. 164, §§ 34 and 55, and predecessor statutes. In 1916, the Department's predecessor (Gas and Electric Light Commissioners), acting under St. 1915, c. 191, authorized the board "to extend its lines into . . . [the] town of Lakeville for the purpose of distributing and selling electricity therein, with all the rights and privileges and subject to all the limitations and obligations set forth in all general laws now or thereafter in force and applicable thereto." Since 1916 the board has been distributing and selling electricity in the towns of Middleborough and Lakeville.

On March 15, 1971, the board filed the following proposed schedules of rates and charges with the Department. It filed a separate schedule for each of three classifications, viz., residential, commercial and industrial, for Middleborough only. It filed a second set of three schedules identical to the first three, but for Lakeville only. It filed a separate schedule for each of three classifications, viz., residential use with space heating, municipal building use, and use by customers whose "monthly KWH use is small in relation to the monthly KVA Maximum Demand," all three of which schedules are applicable in both Middleborough and Lakeville. On March 24, 1971, the Department entered an order suspending the operation of all of the schedules of rates except the first three (the schedules of rates for residential, commercial and industrial customers in Middleborough only) until February 1, 1972, pending investigation by the Department as to the propriety of the rates suspended. The board is appealing from this order, contending that the Department has no jurisdiction to suspend schedules of rates and charges filed by a municipal light board. Following the Department's order suspending the operation of six of the nine schedules in question,

363 Mass. 433                                            435

Board of Gas & Elec. Commrs. of Middleborough *v.* Dept. of Pub. Util.

the board voluntarily suspended the operation of the remaining three schedules which applied only to Middleborough.

On January 13, 1972, the Department held a hearing on the six rate schedules which it had ordered suspended on March 24, 1971. The only evidence disclosed by the record to have been introduced at that hearing was a copy of the board's annual return for 1970 as previously filed with the Department. On January 21, 1972, the Department filed a decision which said that "from all of the evidence available, [it] finds that there is no evidence to warrant a conclusion that Middleboro has exceeded, or will exceed, the statutory limit of 8% earnings on the Cost of Plant in Service as provided by the applicable statutes [1] . . . [and] that no evidence is available in the proceeding to indicate unreasonableness of the proposed rates or any discrimination as to the rates between the Towns of Middleboro and Lakeville or between the various classes of customers in the two towns." Pursuant thereto the Department revoked its order of suspension of March 24, 1971, and further ordered that the board "may make such rates effective as to electricity consumed on and after the date of this order [January 21, 1972] and that the Department's investigation into said rates is hereby terminated and closed." [2]  As part of the case stated, the board expressly disclaimed "any intention to recover from their customers the past charges suspended by the order dated March 24, 1971, should the Court find

---

[1] The applicable statute on this point appears to be G. L. c. 164, § 58, as amended by St. 1964, c. 401, which provides in part that "schedules of prices [by municipal light boards] shall be fixed to yield not more than eight per cent per annum on the cost of the plant, . . . after the payment of all operating expenses, interest on the outstanding debt, the requirements of the serial debt or sinking fund established to meet said debt, and also depreciation of the plant."

[2] The record does not indicate the nature or extent of the Department's investigation, if any, of these rates. Although the Department in its decision purports to find facts, the language used seems instead to amount to a ruling that there was no evidence before it which would permit a finding that the proposed rates were either excessive by statutory standards, unreasonable or discriminatory. In any event the absence of such findings does not affect our ultimate decision in this case.

436                                                      363 Mass. 433

Board of Gas & Elec. Commrs. of Middleborough v. Dept. of Pub. Util.

that the . . . [Department] did not have authority to suspend such rates."

The board presses its appeal despite the fact that the disputed order of suspension was itself revoked by the Department by its decision of January 21, 1972. The Department joins the board in pressing for a decision on the question presented by the appeal, and by the case stated the Department expressly waives the defence of mootness "for the purpose of this action in the interest of obtaining a declaration of whether the order dated March 24, 1971 was proper and lawful." It was represented by counsel that this is a frequently recurring question which should be answered to prevent further disagreements between municipal light boards and the Department. They represent further that it is very difficult to litigate the question to the point of presenting it to an appellate court for decision before the expiration or other termination of the suspension of the rate schedules by the Department. We recognize this practical difficulty and we conclude that we should now answer the question and thereby eliminate or reduce further disagreements between governmental agencies on this subject. In two comparable situations the United States Supreme Court granted relief by describing them as truly "capable of repetition, yet evading review" by an appellate court. *Southern Pac. Terminal Co.* v. *Interstate Commerce Commn.* 219 U. S. 498, 515, and *Roe* v. *Wade*, 410 U. S. 113, 125. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *Tsongas* v. *Secretary of the Commonwealth*, 362 Mass. 708, 713–714.

The only statutory provision expressly authorizing the Department to suspend rate schedules of utility companies is contained in G. L. c. 164, § 94, as amended. That section first requires that "Gas and electric companies shall file with the department schedules . . . showing all rates, prices and charges to be thereafter charged or collected within the commonwealth for the sale and distribution of gas or electricity." After specifying details of such rate schedules, it provides that

363 Mass. 433                                    437

Board of Gas & Elec. Commrs. of Middleborough *v.* Dept. of Pub. Util.

"[t]he department may investigate the propriety of any proposed rate, price or charge and may, pending such investigation and decision thereon, by order served upon the company affected thereby, suspend the taking effect thereof, from time to time, but not for a period longer than ten months." There is nothing in § 94 itself to indicate that it was intended to include a municipal light board by the use of the words "company" or "companies." To the contrary, § 1 of c. 164 defines "electric company" to mean "a corporation organized under the laws of the commonwealth for the purpose of making by means of water power, steam power or otherwise and selling, or distributing and selling, electricity within the commonwealth, or authorized by special act so to do." A municipal light board does not fall within that definition. In *Howard* v. *Chicopee,* 299 Mass. 115, 122, involving the meaning of the words "electric company" as appearing in G. L. c. 164, § 94A, we held that they did "not naturally include a city or town."

Apart from the language of G. L. c. 164, § 94, itself, there is another clear indication that the Legislature did not intend that section to apply to municipal light boards. This indication is found in the following language of § 2 of the same chapter: "In construing sections . . . [70, 71, 74 to 83, inclusive, 92 to 95, inclusive, 103, 105, 106, 109, 112 to 114, inclusive, 116, 117, 119, 120, 121, and 123 to 127], inclusive, unless the context otherwise requires, the terms 'corporation', 'gas company' and 'electric company' shall include all persons, firms, associations and private corporations which own or operate works or a distributing plant for the manufacture and sale or distribution and sale of gas . . . or of electricity, within the commonwealth; and in construing sections . . . [103, 105, 109, 112 to 114, inclusive, 116, 117, 120, 121, and 123 to 127], inclusive, the terms 'corporation', 'gas company' and 'electric company' shall include municipal corporations which own or may acquire municipal lighting plants." The first group of sections identified by number in § 2 do not apply, and the second group

438                                363 Mass. 433

Board of Gas & Elec. Commrs. of Middleborough *v.* Dept. of Pub. Util.

of sections identified by number do apply to municipal corporations, with the clear result that § 94 does not apply to the board. *O'Donnell* v. *North Attleborough,* 212 Mass. 243, 245–246.

There is still further language in G. L. c. 164 which indicates that the Legislature did not intend to authorize the Department to suspend the operation of schedules of rates fixed by a municipal light board. Section 94 applicable to private electric companies requires them to file their schedules with the Department, permits them to change their rates "from time to time" by filing new schedules, but expressly provides that the rates shown in any schedule "shall not become effective until the first day of the month next after the expiration of fourteen days from the filing thereof," unless the Department otherwise authorizes. By contrast, §§ 58 and 59 applicable to municipal light boards require no advance filing with the Department, permit any change in rates to "take effect on the first day of a month" with prior advertising in a newspaper in the municipality, prohibit changes "oftener than once in three months," and require that "[w]hen a town fixes or changes a price, a notice thereof . . . shall be filed within sixty days with the department." The special provisions applicable to municipal light boards (see G. L. c. 164, §§ 55–56A) indicate a legislative deference to the fact that their rate schedules are fixed by "public officers acting under legislative mandate" (*Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300), and that therefore they do not require the close scrutiny and measure of supervision by the Department which is authorized or required as to nonmunicipal electric companies under § 94.

We hold that G. L. c. 164, § 94, as amended, does not authorize the Department to suspend, pending investigation, the operation of rates, prices or charges fixed by a municipal light board under § 58. This applies equally to the schedules filed for the town of Middleborough and for the town of Lakeville. See St. 1915, c. 191.

This case does not involve or require any decision by

this court on the existence, source, nature or scope of the power or authority of the Department to investigate, review, or determine the adequacy, sufficiency or reasonableness of rates, prices or charges fixed by municipal light boards, and we intimate no opinion thereon. See G. L. c. 164, §§ 34–69A, as amended; *Municipal Light Commn. of Taunton* v. *Taunton*, 323 Mass. 79, 83–84; *Holyoke Water Power Co.* v. *Holyoke*, 349 Mass. 442, 445–446.

The case is remanded to the county court for entry by the single justice of a decree in accordance with this opinion.

*So ordered.*