TOWN OF MIDDLEBOROUGH *vs.* MIDDLEBOROUGH GAS AND ELECTRIC DEPARTMENT.

Plymouth. February 8, 1996. - May 3, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Municipal Corporations,* Municipal electric plant, Municipal finance. *Middleborough. Department of Public Utilities. Contract,* Municipality.

Discussion of the considerations in determining whether a municipality may maintain a civil action against one of its own departments. [584-585]

A municipal gas and electric department was sufficiently separate and distinct as a financial and political entity from the municipality itself so as to properly be a defendant in a negligence action brought by the municipality for damages arising out of a fire that partially destroyed a public school building owned by the municipality. [585-588]

CIVIL ACTION commenced in the Superior Court Department on April 16, 1991.

The case was heard by *Richard S. Kelley,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Roger A. Emanuelson (Marie Cheung-Truslow* with him) for the plaintiff.

*Vincent L. DiCianni (Nicholas J. Scobbo, Jr.,* with him) for the defendant.

*Thomas J. Urbelis, Marilyn T. McGoldrick & James B. Lampke,* for City Solicitors and Town Counsel Association, amicus curiae, submitted a brief.

*John W. Welch,* for Municipal Electric Association of Massachusetts, Inc., amicus curiae, submitted a brief.

FRIED, J. The plaintiff, the town of Middleborough, filed this action against the defendant, the Middleborough Gas and Electric Department (MG&ED), for damages arising out of a 1988 fire that partially destroyed a public school building owned by the town. As a result of the fire, the town suffered

damages in excess of $4,000,000. The town's property insurer, United Community Insurance Company (United), indemnified the town for its damage and the town subrogated its rights to United, who then initiated this action against MG&ED. The complaint alleges that MG&ED negligently failed to ground its electrical utility pole at the school, breached an implied contract to provide electrical services in a careful manner, and breached a warranty by failing to provide safe electrical services to the town.

In opposition to the town's action, MG&ED made the "formal objection" that the same party cannot be both the plaintiff and the defendant in the same suit. See *Cutting* v. *Daigneau*, 151 Mass. 297, 298 (1890). On this ground, the Superior Court judge granted summary judgment in favor of MG&ED. In a memorandum and order pursuant to rule 1:28, the Appeals Court reasoned that because MG&ED "is a division or department of the town," the town was in effect suing itself, and, thus, dismissed the suit. See 38 Mass. App. Ct. 1127 (1995). We granted further appellate review and now reverse.

Whether there is a genuine dispute with practical consequences is a question depending not on abstract deductions from the supposed formal characteristics of the disputing parties, but on the circumstances of the particular case and the practical consequences of the adjudication.[1] This court has regularly relied on practical considerations when deciding, for a variety of purposes and in a variety of contexts, issues related to the financial and political independence of a town and its associated bodies. See, e.g., *Dattoli* v. *Hale Hospital*, 400 Mass. 175 (1987) (hospital, on the record before the court, a "public employer" for purposes of G. L. c. 258); *Board of Pub. Works of Wellesley* v. *Selectmen of Wellesley*, 377 Mass. 621 (1979) (in the context of unique local regulations and State law, the board of public works could not bring a suit on

---

[1]This court first stated the abstract proposition that a party may not sue itself in a number of cases involving suits between a partnership and a one of its partners concerning disputes that related to items involved with the partnership's business. See *Cutting* v. *Daigneau*, 151 Mass. 297, 298 (1890); *Stoddard* v. *Wood*, 9 Gray 90, 91 (1857); *Temple* v. *Seaver*, 11 Cush. 314, 314 (1853); *Thayer* v. *Buffin*, 11 Met. 398 (1846). Today, the relationship among partners and between a partner and the partnership is governed by G. L. c. 108A, §§ 1-44 (1994 ed.) (Uniform Partnership Act), and that body of law is not relevant to the dispute here.

behalf of town unless by special application); *Municipal Light Comm'n of Peabody* v. *Peabody*, 348 Mass. 266, 273 (1964) (determining respective powers and duties of mayor and light commission with respect to G. L. c. 164); *Municipal Light Comm'n of Taunton* v. *State Employees' Group Ins. Comm'n*, 344 Mass. 533 (1962) (commission a "public unit" for purposes of G. L. c. 32B, § 2[c]). Moreover, MG&ED itself directs our attention to numerous cases in which courts have adjudicated disputes between cities or towns and entities within them, or between two entities created by a city or town. See, e.g., *Municipal Light Comm'n of Peabody, supra*; *Mayor of Gloucester* v. *City Clerk of Gloucester*, 327 Mass. 460 (1951); *Commissioners of Woburn Cemetery* v. *Treasurer of Woburn*, 319 Mass. 86 (1946). MG&ED seeks to distinguish those cases on the ground that they all involved suits for declaratory, equitable or extraordinary relief, and were not suits for money damages. But that distinction goes to appropriateness of remedy and not to justiciability. If sufficient adversariness exists for purposes of equitable relief then it exists for a suit for money damages, and the only question is whether money damages would be appropriate as a practical matter here. But cf. *Merchants Nat'l Bank* v. *Merchants Nat'l Bank*, 318 Mass. 563, 565 (1945). In sum, the jurisdiction of the court depends on whether MG&ED and the town are sufficiently distinct as financial and political entities to support a suit by the town against MG&ED for the town's loss as a result of the fire. The test is a practical test and we apply it here.

We first examine the statutory framework that created both the town and MG&ED. The town of Middleborough is incorporated and organized under G. L. c. 39, c. 40 (1994 ed.), and art. 2 of the Massachusetts Constitution. The town may sue or be sued in its corporate capacity. G. L. c. 40, § 2. In 1893, pursuant to St. 1891, c. 370, now appearing at G. L. c. 164, § 34, the town purchased a private gas company, the Middleborough Gas and Electric Company (renamed MG&ED), by town vote and by using town-issued bonds. Until 1982, the town's board of selectmen was charged with the operation of MG&ED. In 1982, the town amended its charter as authorized by G. L. c. 164, § 55, to establish a municipal light board (light board). By this amendment, the town transferred control of MG&ED from its board of select-

men to the light board. The voters of Middleborough elect the five members of the light board.

Next, we consider the relationship between the MG&ED and the town to determine the extent to which they act independently of each other. The light board has the "authority to construct, purchase or lease a gas or electric plant in accordance with the vote of the town and to maintain and operate the same." *Id.* The light board appoints the manager of MG&ED. G. L. c. 164, § 56. The manager has "full charge of the operation and management of the plant, the manufacture and distribution of gas or electric, the purchase of supplies, the employment of attorneys and of agents and servants, the method, time, price, quantity and quality of the supply, the collection of bills, and the keeping of accounts." *Id.* See *Municipal Light Comm'n of Peabody, supra* at 273 ("management and fiscal operation of the municipal light department . . . are vested in the commission and the manager of the plant"). The statute further provides for the general supervision of MG&ED by the Department of Public Utilities (DPU). Specifically, DPU requires the submission of annual filings, limits annual earnings, and regulates such issues as accounting methods, billing practices, bidding procedures, and depreciation rates. See G. L. c. 164, §§ 57-59, 63. The statute also authorizes DPU to order the furnishing of power to a consumer. See G. L. c. 164, § 60. The light board sets the gas and electric rates by the formula specified in G. L. c. 164, § 58, and submits all rate changes to the DPU. G. L. c. 164, § 59. DPU has "supervisory power to review such rates as set forth in G. L. c. 164. See, e.g., *Municipal Light Comm'n of Peabody* [*,supra* at] 268-273." *Bertone* v. *Department of Public Utils.*, 411 Mass. 536, 548 (1992). Cf. *Board of Gas & Electric Comm'rs of Middleborough* v. *Department of Pub. Utils,* 363 Mass. 433, 436-439 (1973) (although municipally-owned gas and electric companies not subject to G. L. c. 164, § 94, court did not reach the issue of the "existence, source, nature or scope of the power or authority of the Department to investigate, review, or determine the adequacy, sufficiency or reasonableness of rates").

MG&ED determines its own budget in accordance with G. L. c. 164, §§ 1 et seq. (governing the operation of commercial businesses), and does not depend on appropriations as do the town's other departments. See G. L. c. 44, §§ 1 et seq.

See *Municipal Light Comm'n of Peabody, supra* (budget of municipal light department determined in accordance with G. L. c. 164, governing the operation of commercial business, and not by the procedures of G. L. c. 44, governing municipal departments). Unlike the budgets of the town's other departments, MG&ED's budget is not voted on by the voters of Middleborough nor approved by the town. MG&ED is a profit making enterprise. Its revenues are deposited in the town treasury account designated as MG&ED's account and its bills are paid by the warrant process from this account, i.e., MG&ED submits its bills and expenses to the town and the town issues the checks to the various vendors. See G. L. c. 164, § 56. The town, however, earns interest on the revenue and uses that interest for its own purposes. The town may appropriate funds to MG&ED from sources other than MG&ED's own receipts. See, e.g., G. L. c. 164, §§ 40, 57A. MG&ED's employees are town employees paid through the town treasurer's office by town-issued checks. MG&ED has no power to issue bonds or incur debt without prior approval by town vote.

MG&ED has broad authority to contract in its own name. See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Electric Co.,* 399 Mass. 640, 647 (1987) (municipal light plant has broad powers to contract with other parties); *Municipal Light Comm'n of Taunton, supra* at 84 (commission not subject to local ordinances governing the awarding of contract because provisions of c. 164 exclusively delineate restrictions on commission and its manager). For example, the town and MG&ED carry different liability insurance policies.[2] Affirming the independence of the municipal-owned gas and electric departments, the Legislature has granted them the right to establish a self-insurance trust fund. G. L. c. 164, §§ 129-132. And the parties appear to agree — at least when they are not suing each other — that MG&ED may sue and be sued in its own capacity, as a number of cases cited in the plaintiff's memorandum to this court illustrate.

Finally, MG&ED is distinct from the town in another,

[2]Although the policies are not part of the record, the town has submitted an affidavit that avers that Lexington Insurance provided MG&ED a general liability insurance coverage for claims up to $1,000,000 and that Aegis Insurance provided MG&ED excess coverage with unknown limits. The parties both state that they are separately covered by insurance.

practical sense particularly relevant to this controversy. The town's revenues come from its citizens, whereas MG&ED's revenues come from its ratepayers, in both Middleborough and the town of Lakeville.[3] See *Hull Mun. Lighting Plant*, *supra* at 647 (municipal lighting boards act on behalf of ratepayers). The town's taxpayers pay taxes on the basis of property values; MG&ED's ratepayers pay for their electricity and gas on the basis of usage. By this suit the town seeks to shift the burden of the cost of MG&ED's alleged negligence from its taxpayers to MG&ED's ratepayers either directly or, if MG&ED's insurers pay for the damage, through increased premiums. If this had been a loss incurred by MG&ED due to its mismanagement, its ratepayers would have absorbed the loss. For all these reasons, MG&ED and the town are sufficiently distinct as financial and political entities to support a suit by the town against MG&ED for the town's loss as a result of the fire.

MG&ED invites the court to affirm summary judgment in its favor on an alternative ground. MG&ED asserts that if the town can sue MG&ED for money damages, the town's complaint nevertheless fails to assert a claim on which relief can be granted. Specifically, it argues that no contract or warranty, express or implied, existed between the parties and that the town has presented no evidence of MG&ED's negligence. Neither the Superior Court nor the Appeals Court addressed this issue, and we do not reach it here. For the same reason, we do not reach the issue of the applicability of the Massachusetts Tort Claims Act (Act), G. L. c. 258 (1994 ed.), to this case. We note only that the Act was amended after the cause of action here accrued and that there is a serious question as to the impact of this amendment on this suit. Cf. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309 (1993) (discussing amendments to G. L. c. 151B, § 9, authorizing the recovery of

---

[3]MG&ED originally supplied electricity only to the residents of Middleborough. But in 1916 the Department of Public Utilities' predecessor approved the extension of power lines "into . . . the town of Lakeville for the purpose of distributing and selling electricity therein." St. 1915, c. 191. See *Board of Gas & Electric Comm'rs of Middleborough* v. *Department of Pub. Utils.*, 363 Mass. 433, 434 (1973). MG&ED has been supplying electricity to both Middleborough and Lakeville ever since.

punitive damages in a discrimination case). The parties may address these issues on remand.

We remand this case for proceedings consistent with this opinion.

*Judgment reversed.*