## Amy S. Bernal *vs.* Irwin Weitz.

No. 99-P-1865.

Hampden. December 11, 2001. - April 8, 2002.

Present: Brown, Lenk, & Cowin, JJ.

*Notary Public. Negligence,* Notary public. *Damages,* Nominal damages.

This court discerned no grounds for a civil plaintiff to recover in fraud from a
    duly appointed notary public who falsely attested to the plaintiff's being
    present and signing certain mortgage documents, and concluded that, in the
    absence of any finding by the trial judge of specific harm attributable to
    the breach of the notary's duty, the plaintiff failed to establish the damage
    element of the plaintiff's negligence claim; consequently, the plaintiff was
    not entitled to damages, not even nominal damages. [396]

CIVIL ACTION commenced in the Superior Court Department on
December 6, 1991.

The case was heard by *Bertha D. Josephson,* J.

*Peter H. Rosenthal* for the plaintiff.

*Charles J. Sclafani, Jr.,* for the defendant.

BROWN, J. This is an appeal by the plaintiff from a judgment
awarding nominal damages for her loss arising from the
negligence of the defendant, Irwin Weitz, a duly appointed
notary public.[1] The plaintiff challenges the damage award, argu-
ing that the judge relied on improper precedent and erred in
finding that the extent of her loss was not adequately proven. In
the alternative, the plaintiff urges that we find against the
defendant for fraud or negligent misrepresentation and award
damages accordingly.

The plaintiff, Amy Bernal (Amy), was married to Hugo Ber-
nal (Hugo) from 1987 to 1991. In March, 1988, Amy and Hugo
purchased property in Wilbraham (residence), paid for in part

---

[1]Although Weitz is also a licensed attorney in the Commonwealth, nothing
in our decision turns on that fact.

by a $200,000 mortgage from Springfield Institute for Savings. Unbeknownst to Amy, on June 21, 1988, Hugo, purportedly on behalf of himself and Amy, granted a second mortgage to a different lender, Heritage Bank, in the amount of $100,000.[2]

By the end of 1990, due to Hugo's unsuccessful business transactions and the extreme downturn in the real estate market, the couple's financial base began to crumble. The couple's marriage disintegrated at virtually the same time. In December, 1990, Amy obtained a restraining order against Hugo, forcing him to move out of the residence. In spring, 1991, Amy discovered that Hugo had obtained the second mortgage and that it had been rolled over four times.[3]

The second mortgage documents required both Amy's and Hugo's signatures. When Hugo, appearing without Amy, presented the documents to Weitz to be notarized, Hugo represented to Weitz that Amy's signatures were genuine. In fact, Hugo had forged Amy's signatures. She knew nothing about the documents. Weitz purported to notarize the documents, falsely attesting to Amy being present and signing the documents before him. See G. L. c. 267, § 1.

Amy, still living in the residence, was unable to make payments on the first and second mortgages. The first mortgagee eventually foreclosed on the property.[4]

The trial judge found that Weitz was negligent and that his negligence resulted in the encumbrance of the equity in the residence. However, the judge concluded that since the residence was foreclosed by the first mortgagee, not the second mortgagee, Weitz's negligence did not cause Amy's claimed injury. The judge found that Amy was harmed only by the first mortgagee's

---

[2]The trial judge found that Weitz did not notify Amy that a second mortgage had been taken on the residence because he believed she was aware of its existence.

[3]Heritage Bank was a party to this suit. However, prior to trial, it became insolvent and the Federal Deposit Insurance Corporation (FDIC) had taken it over. The case was removed to the United States District Court, where the FDIC was dismissed as the liquidating agent for Heritage Bank. The case was subsequently transferred back to the Superior Court.

[4]The record does not reflect whether the proceeds from the foreclosure sale satisfied the debt on the first mortgage; therefore, we are not certain whether there was in fact any equity left in the residence after foreclosure.

foreclosure (as to which there was no breach of duty by Weitz). She went on to conclude that since Hugo had duped Weitz as well as Amy, there was no fraud or intent to harm Amy on Weitz's part, even though Weitz breached his duty as notary. The judge reasoned that although there was a breach of duty owed to Amy by Weitz as to the second mortgage, because the second mortgage provided a $100,000 infusion of funds into the family finances from which Amy benefitted, and because there was no evidence of fraud by Weitz since he gained nothing from the deception and was himself misled by Hugo, Amy was entitled only to nominal damages. This appeal ensued.

We think the judge's findings are dispositive, and Amy does not argue or establish that they are clearly erroneous.[5] Amy claims that the trial judge erred in holding that nominal damages are appropriate, given the extent of her loss due to Weitz's negligence.

Plaintiffs have the burden of proving every element of their negligence claim. *Ulwick* v. *DeChristopher*, 411 Mass. 401, 408 (1991). Actual damages or loss are an essential element of the tort of negligence. *Ibid*. Damage awards are intended to compensate plaintiffs for the loss they have sustained.

Based on the judge's findings, we do not discern any grounds for recovery in fraud. In addition, we note the absence of any finding of specific harm attributable to the breach of the notary's duty. Indeed, since the judge found — correctly — that Amy had suffered no loss, there is a failure to establish the damage element of the negligence claim; Amy is not entitled to anything, not even nominal damages.

Although Weitz's breach of duty as a notary public is not actionable as negligence in the instant circumstances, his conscious lapse violates the most fundamental duty of a notary and our opinion should not be read as condoning the sloppy and grievous exercise of notary public commissions.

A judgment is to enter for the defendant.

*So ordered.*

---

[5]Deciding as we do, we have no occasion to address Amy's claim that the judge incorrectly relied on the case of *Strother* v. *Shain*, 322 Mass. 435 (1948).