## PATRICIA VAUGHAN *vs.* EASTERN EDISON COMPANY.

No. 97-P-1428.

Plymouth. January 11, 1999. - November 18, 1999.

Present: BROWN, DREBEN, & BECK, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Duty to prevent harm, Pedestrian, Electric light pole. *Electric Company. Public Utilities,* Electric company.

This court declined to impose tort liability on an electric utility company for injuries to a pedestrian that were allegedly caused in part by an inoperative street light that the utility had contracted to maintain. [226-231]

CIVIL ACTION commenced in the Superior Court Department on September 7, 1993.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a motion for summary judgment.

*Kathryn Hand* for the plaintiff.

*Robert A. Curley, Jr.,* for the defendant.

BECK, J. On a snowy evening in February, 1992, the plaintiff suffered severe and lasting injuries when she was hit by a car in a crosswalk on Burrell Avenue in Bridgewater. She was on her way from the Bridgewater State College campus to the commuter parking lot. Neither of the street lights on the opposite side of the street from where the plaintiff entered the crosswalk was working at the time of the accident. One had a bird's nest in the ballast; a live wire in the other was broken off. The defendant, Eastern Edison Company (Eastern Edison), owned and installed the light poles, apparently at the request of the college. The college paid for the service.

The plaintiff brought suit against Eastern Edison, claiming that her injuries "were caused by the negligence and carelessness of . . . Eastern Edison Company[] in failing to properly erect, inspect, repair and maintain the light." Eastern Edison moved for summary judgment claiming it had no legal duty to

the plaintiff. A Superior Court judge allowed Eastern Edison's motion on the basis of *Davis* v. *Westwood Group*, 420 Mass. 739 (1995) (racetrack abutting highway owed no duty to provide safe passage to patrons), and case law in other jurisdictions. On appeal, the plaintiff urges this court to "expand [the] duties [of an electric utility] beyond those specifically set out in previous decisions . . . with a clear statement imposing liability on Edison." She relies in part on the Restatement (Second) of Torts § 324A (1965).

Whether the defendant utility company had a legal duty to a pedestrian such as the plaintiff is a question of law. *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 722-723 (1998). Since there is no dispute about the facts, a motion pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), was appropriate. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 715 (1991), quoting from 3 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1231, at 96 (Wright rev. ed. 1958) (Rule 56 is "an excellent device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved"). On review, we may affirm on grounds other than those given by the Superior Court judge. *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993).

The narrow legal question before us is whether an electric utility company owes a duty of care to a pedestrian injured in an accident caused in part by an inoperative street light that the utility has contracted to maintain. Compare *White* v. *Southern Cal. Edison Co.*, 25 Cal. App. 4th 442, 447 (1994). While there is no published case in Massachusetts on this precise point, the Supreme Judicial Court long ago observed, "[I]t is settled in this Commonwealth that the mere failure to provide and maintain proper lights in its streets is not negligence under the highway act, even if the way unlighted be dangerous." *Hill* v. *Boston*, 231 Mass. 372, 373-374 (1918).

Cases in other jurisdictions almost uniformly hold that utilities are not liable to third persons for injuries caused by nonfunctioning street lights. See *White* v. *Southern Cal. Edison Co.*, 25 Cal. App. 4th at 450; *Quinn* v. *Georgia Power Co.*, 51 Ga. App. 291 (1935); *Shafouk Nor El Din Hamza* v. *Bourgeois*, 493 So. 2d 112 (La. Ct. App. 1986); *East Coast Freight Lines, Inc.* v. *Consolidated Gas, Elec. Light & Power Co. of Baltimore*,

187 Md. 385 (1946); *Cochran* v. *Public Serv. Elec. Co.*, 97 N.J.L. 480 (1922); *Grosshans* v. *Rochester Gas & Elec. Corp.*, 103 A.D.2d 1038 (N.Y. 1984) (but finding factual issues under principles of proportionate liability as to utility's liability to construction company and county for negligent failure to reconnect power lines). The principle also applies to accidents caused by malfunctioning traffic signals. See *Arenado* v. *Florida Power & Light Co.*, 523 So. 2d 628 (Fla. Dist. Ct. App. 1988); *Gin* v. *Yachanin*, 75 Ohio App. 3d 802 (1991). See also *Turbe* v. *Government of Virgin Islands*, 938 F.2d 427 (3d Cir. 1991) (on facts as alleged, no liability to victim of criminal assault for negligent failure to repair street lights); *Strauss* v. *Belle Realty Co.*, 65 N.Y.2d 399 (1985) (no duty to tenant injured in dark common area during blackout). See generally Annot., Liability of Electric Utility to Nonpatron for Interruption or Failure of Power, 54 A.L.R. 4th 667, 670, 676-679 (1987). But see *Todd* v. *Northeast Util.*, 40 Conn. Supp. 159 (1984) (trial court judge denied defendant's motion to strike complaint where injured plaintiff alleged that fall foreseeable on basis of her previous complaint to utility about poorly lit sidewalk); *Lemire* v. *New Orleans Pub. Serv., Inc.*, 538 So. 2d 1151, 1155-1156 (La. Ct. App. 1989) (finding liability on statutory grounds and disagreeing with *Shafouk Nor El Din Hamza* v. *Bourgeois, supra*). Compare *Withers* v. *Regional Transit Authy.*, 669 So. 2d 466 (La. Ct. App. 1996) (summary judgment for utility reversed because of ambiguity in the contract concerning utility's responsibilities); *Koch* v. *Consolidated Edison Co. of N.Y., Inc.*, 62 N.Y.2d 548 (1984), cert. denied, 469 U.S. 1210 (1985) (finding liability where third-party beneficiaries mentioned in contract).

In rejecting claims of liability against utilities, some jurisdictions continue to rely, at least in part, on the requirement of privity. See, e.g., *White* v. *Southern Cal. Edison Co.*, 25 Cal. App. 4th at 450; *Grosshans* v. *Rochester Gas & Elec. Corp.*, 103 A.D.2d 1038; *Gin* v. *Yachanin*, 75 Ohio App. 3d at 805. More often, however, the cases stress the public policy implications of expanding the duty of utilities to individual members of the general public for lapses in contracts for general maintenance and repair. See generally Prosser & Keeton, Torts § 4, at 24-25; § 93, at 667-668 (5th ed. 1984). A leading case in this regard, concerning delivery of water to fire hydrants rather than electricity to street lights (and not universally followed as to water

companies, see *Weinberg* v. *Dinger*, 106 N.J. 469, 472, 482 [1987]) is *H.R. Moch Co.* v. *Rensselaer Water Co.*, 247 N.Y. 160 (1928) (Cardozo, C.J.). In that case, the defendant water works company had contracted to supply water to the city of Rensselaer, including service at fire hydrants. *Id.* at 163. The plaintiff, whose warehouse was destroyed in a fire, claimed that the defendant did not deliver an "adequate quantity of water, with adequate pressure to stay, suppress or extinguish the fire before it reached the [plaintiff's] warehouse." *Ibid.* The plaintiff brought suit on three theories: breach of contract, negligence, and breach of statutory duty. The New York Court of Appeals rejected all three.

In rejecting the tort claim, the court observed that if the water company were held to have a duty to the warehouse owner "liability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty." *Id.* at 168. "Every one making a promise having the quality of a contract will be under a duty to the promisee by virtue of the promise, but under another duty, apart from contract, to an indefinite number of potential beneficiaries when performance has begun." *Ibid.* The water company's conduct was "mere negligent omission, unaccompanied by malice or other aggravating elements. The failure in such circumstances to furnish an adequate supply of water is at most the denial of a benefit. It is not the commission of a wrong." *Id.* at 169.

Recently the California Court of Appeal addressed this issue in less eloquent, but arguably more modern, terms. There the plaintiff was seriously injured when his moped collided with a van at a poorly lighted intersection. The plaintiff claimed that the utility's negligent failure to maintain and repair the street lights caused the accident. *White* v. *Southern Cal. Edison Co.*, 25 Cal. App. 4th at 445-446. In determining specifically whether "a public utility should be liable to motorists [or pedestrians] for inoperable street lights, [the court] . . . consider[ed] the cost of imposing this liability on public utilities, the current public utility rate structures, the large numbers of streetlights, the likelihood that streetlights will become periodically inoperable, the fact that motor vehicles operate at night with headlights, the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision, and the availability of automobile insurance to pay for damages." *Id.* at 451.

On review of the various considerations in the out-of-State

cases, we conclude that Massachusetts should adopt the rule applied in the majority of other jurisdictions — that ordinarily an electric company under contract to make repairs and maintain street lights has no common law duty to third persons who are injured. "Duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed." *Id.* at 447. The capacity to bear or distribute loss is a factor to consider in allocating the risk. See Prosser & Keeton, Torts § 4, at 24. We appreciate that relieving the electric company of liability may leave the "loss on the shoulders of the individual plaintiff, who may be ruined by it." *Ibid.* "But the imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could [also] be ruinous and the expense of litigation and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified." *Id.* § 93, at 671.

Here there is no claim that the utility was "using its electric current in any dangerous manner or, by its use, creating any dangerous condition." *White* v. *Southern Cal. Edison Co.,* 25 Cal. App. 4th at 450, quoting from *East Coast Freight Lines, Inc.* v. *Consolidated Gas, Elec. Light & Power Co. of Baltimore,* 187 Md. at 402. Nor was there an allegation that the street lights were necessary to obviate some "peculiar condition rendering lighting necessary in order to make the streets safe for travel." *White* v. *Southern Cal. Edison Co.,* 25 Cal. App. 4th at 451, quoting from *Antenor* v. *Los Angeles,* 174 Cal. App. 3d 477, 483 (1985). See *Quinn* v. *Georgia Power Co.,* 51 Ga. App. at 293 (no liability "where there is no obstruction, excavation, or other extraordinary defect in the street"). "[The utility] did not launch a force or instrument of harm." *Shafouk Nor El Din Hamza* v. *Bourgeois,* 493 So. 2d at 117. Nor was there any allegation of "malice or other aggravating elements." *H.R. Moch Co.* v. *Rensselaer Water Co.,* 247 N.Y. at 169. We therefore conclude that Eastern Edison had no duty to the plaintiff and that summary judgment was properly entered.

The plaintiff urges us to disregard these cases and decide that Eastern Edison had a duty under § 324A(a) and (c) of the Restatement (Second) of Torts. Although this issue appears not to have been raised below, both parties have briefed the issue without objection from the defendant, and we exercise our

discretion to consider it. See *Norfolk* v. *Department of Envtl. Quality Engr.*, 407 Mass. 233, 238 n.9 (1990).

Section 324A concerns "[l]iability to [t]hird [p]erson for [n]egligent [p]erformance of [u]ndertaking." Insofar as relevant here, the section provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or . . .
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The few Massachusetts cases finding a duty to a third party under the rationale of § 324A are distinguishable because the injured party was within a more readily defined class of those at risk and could not have protected herself by independent inspection or observation. See *Banaghan* v. *Dewey*, 340 Mass. 73 (1959) (defendant liable to third party for negligent inspection of elevator, citing prior edition of Restatement); *Parent* v. *Stone & Webster Engr. Corp.*, 408 Mass. 108 (1990) (defendant liable to plant employee for failure to warn of or correct hazardous electrical panel); *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122 (1980) (defendant liable to passenger in crash for failure to inspect helicopter). Compare *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365 (1997) (citing § 324A but holding that lessee had no liability to third party for failure to remove accumulation of snow and ice). Cf. *O'Gorman* v. *Antonio Rubinaccio & Sons*, 408 Mass. 758, 762 & n.3 (1990) (bar that allowed drunk driver to reclaim his keys but did not serve him any alcohol not liable for death of victim in drunk driving accident).

Furthermore, the plaintiff has shown neither the increased risk nor the detrimental reliance that § 324A requires. Section 323(a), which "parallels" § 324A(a), see Restatement (Second) of Torts § 324A comment a, "applies only when the defendant's

actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially. . . . [T]he defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Turbe* v. *Government of Virgin Islands*, 938 F.2d at 432. "[T]he failure to maintain an installed street light does not create a risk greater than the risk created by the total absence of a street-light." *White* v. *Southern Cal. Edison Co.*, 25 Cal. App. 4th at 451. Compare cases referring to sins of commission rather than omission, e.g., *Patentas* v. *United States*, 687 F.2d 707, 716 (3d Cir. 1982), or denial of a benefit rather than commission of a wrong, e.g., *Shubitz* v. *Consolidated Edison Co. of N.Y.*, 59 Misc. 2d 732, 735 (1969).

In order to show reliance under § 324A(c), the plaintiff must show that she "changed [her] position in reasonable reliance on the defendant's provision of protective services, and is thereby injured when the defendant fails to perform those services competently." *Turbe* v. *Government of Virgin Islands, supra* at 431 (discussing § 323[b] which is virtually identical to § 324A[c]). Here, "[t]he complaint alleges in conclusory fashion that the inadequate lighting created a dangerous condition because visibility was diminished. This is not sufficient to impose a duty on [the defendant]." *White* v. *Southern Cal. Edison Co., supra* at 451. "[N]othing in the complaint [or elsewhere in the record] suggests that [the utility] had any reasonable indication that pedestrians [in general or this plaintiff in particular] would forgo other protective measures in response to the existence of street lighting." *Turbe* v. *Government of Virgin Islands, supra* at 431.

Having decided the case as we do, we do not reach the defendant's argument claiming a failure of notice pursuant to G. L. c. 84, § 18.

*Judgment affirmed.*