Botsford, J.
The plaintiff Rayees Ahmed brings this wrongful death action to recover for the death of his wife, Zarmina Tasheal Ahmed. The plaintiffs wife was struck and killed by an automobile operated by Marie Burns in the Town of Reading. The plaintiff alleges in his amended complaint that: (1) the defendant Reading Municipal Light Department (RMLD) was negligent in its inspection, maintenance and repair of at least one street light (Count III and Count IV); and (2) the defendant Town of Reading (the town) was negligent in its maintenance of lighting conditions on the town’s streets (Count VII and Count IV[A][3]).
The RMLD and the town have now moved to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Mass.R.Civ.R 56.[4] The plaintiff has moved to stay the court’s consideration of the defendants’ motion for summary judgment until discovery is completed. For the reasons discussed below the plaintiffs motion to stay is allowed and the motions for summary judgment are denied at this time without prejudice.
BACKGROUND
The undisputed facts contained in the motion papers are as follows. At approximately 5:00 p.m. on December 11, 1997, the plaintiffs decedent was struck by an automobile as she was crossing Main Street in the town. She suffered serious injuries and died on the same day. Burns operated the automobile that struck the plaintiffs wife. On the day the plaintiffs wife was killed, three municipal streetlights in a row in the vicinity of the accident were either not working or were intentionally turned off. The RMLD produced and supplied electricity to the streetlights.[5]
In 1991, as a cost saving measure, the town decided to turn off every other street light along Main Street, and instructed the RMLD to do so. The streetlights which were turned off were marked with orange caps so that the RMLD and the town could identify the lights that were intentionally turned off.[6]
At this early stage of the case, I consider the facts to be in dispute about the circumstances of the collision and its cause(s).
DISCUSSION
I consider the motions for summary judgment, with due awareness that the plaintiff has not had an opportunity to conduct discovery. I discuss the RMLD first, and then the town.
1. The RMLD
The plaintiff alleges that at the time of his wife’s accident and death, the RMLD was responsible for maintaining and repairing all the lights in the town, including those on Main Street. According to the plaintiff, the RMLD performed its maintenance duty negligently, resulting in the darkened condition on Main Street and thereby causing the death of the plaintiffs wife.[7] For purposes of ruling on this motion, I assume that one or more streetlights which were intended to be operative on the relevant portion of Main Street in fact were not in proper working order with functioning lights on December 11, 1997, and that the RMLD could be found negligent because of this condition.
Relying on the recent decision in Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225 (1999), the RMLD argues that even if one does assume negligence on its part, there is still no liability. Vaughn involved a claim *192 for damages brought by a woman who was severely injured when she was hit by a motor vehicle as she crossed a street in a public crosswalk. She alleged that her injuries were caused in part by the defendant electric utility’s negligent maintenance of the streetlights on either side of the crosswalk; neither of two lights was working at the time of the accident. Id. at 225. The court saw the issue as whether or not the utility should be held to owe a duty of care to the plaintiff.[8] It concluded that for reasons of public policy, no duty existed. In the court’s view, if a public utility were to be held liable for injuries suffered by a member of the public on account of a nonfunctioning street light, the result would be an open-ended financial responsibility that the utility and its rate payers would not be able to sustain. Id. at 226-29.
Vaughan controls here. Although the RMLD is a governmental body which qualifies as a public employer under the Tort Claims Act, G.L.c. 258, it is nonetheless a distinct and independent entity from the town. See Middleborough v. Middleborough Gas & Elec. Dept., 422 Mass. 583, 586 (1996). Like the investor-owned public utility company that was the plaintiff in the Vaughan case, the RMLD is subject to the regulation of the Department of Public Utilities, not the town’s selectmen, and of greater significance it derives its revenues from its ratepayers — not from the taxpayers. See Middleborough, supra, 422 Mass. at 586-88. The same policy concerns that persuaded the court in Vaughan not to impose a duty of care on the utility company — the potential for being responsible to an indefinite group of individuals with the accompanying risk of unknown financial obligations that could be covered by automobile insurance — apply with equal force to a municipal electric company like the RMLD.
Vaughan leaves open the question whether in certain circumstances a utility may still be found liable for a nonfunctioning light; examples listed include, inter alia, where there is an allegation that lights are necessary to obviate some peculiar danger in the road for travel, or some obstruction or extraordinary defect. See Vaughan, 48 Mass.App.Ct. at 229. The plaintiff may be entitled to conduct some limited discovery on these issues. Accordingly, the RMLD’s motion for summary judgment will be denied at this point, but if discovery reveals no obstructions or defects or peculiar conditions in the road, then the motion should be allowed.
2. The Town
The plaintiffs claim against the town appears to be two-fold: (1) the town was responsible for determining whether streetlights in the town should be illuminated and negligently instructed the RMLD not to light all the streetlights in the vicinity of the accident; and (2) the town was also responsiblé for the maintenance and repairs of all lighting conditions on Main Street in the town and negligently performed this task.[9]
A. The Town’s Decision to Turn Off Every Other Street Light
The town argues that insofar as the plaintiff challenges its decision to turn off every other street light on Main Street, the town is exempt from liability under G.L.c. 258, § 10(b).
General Laws c. 258, § 10(b) provides that the Tort Claims Act does not apply to:
(b) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused . . .
“The application of the discretionary function exception is a question of law for the court.” Alter v. Newton, 35 Mass.App.Ct. 142, 148 (1993) (citations omitted). In Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992), the court described a two part test to determine whether or not the challenged conduct on the part of the government fits within this exception.
The first step in deciding whether a plaintiffs claim is foreclosed by the discretionary function exception of § 10(b) is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow . . . All the first step involves is a determination whether the actor had any discretion to do or not to do what the plaintiff claims caused him harm. Quite obviously, if the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case.
Id. There is no evidence in this case that points to or suggests the existence of a statute, regulation, or agency practice regulating the number of streetlights which are to remain on. Accordingly, it appears as a general matter that the town had discretion to make a decision to turn off every other street light.[10]
Under part two of the Stoller test, the court must determine “whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability.” Stoller, 412 Mass. at 141.
[T]he dividing line should be between those functions that rest on the exercise of judgment and discretion and represent planning and policy making [for which there would be governmental immunity] and those functions which involve the implementation and execution of such governmental policy or planning [for which there would be no governmental immunity].
Id., at 142, (brackets in original; quotations omitted). The town’s determination to turn off every other light on Main Street was intended as a cost saving measure, a decision about allocation of financial resources. Judgments about the proper allocation of a town’s *193 available funds involve at their core decisions of planning and policy. See, e.g., Stoller, 412 Mass, at 145 (number and location of fire stations, amount of firefighting equipment to purchase, size of fire department, number and location of hydrants and quantity of water supply “involve policy considerations, especially the allocation of financial resources”); Alake v. Boston, 40 Mass.App.Ct. 610, 612-13 (1996) (rejecting claim under G.L.c. 258 that city had provided an inadequate number of school chaperons for field trip;' “decisions about allocating limited resources to provide adequate security qualify as policy decisions within the meaning of § 10(b), and are exempt from suit under the act"). Accordingly, I conclude that a determination by the town concerning the number of streetlights to turn on or off — if such a determination were in effect in 1997 — would be a discretionary decision that is exempt from coverage under G.L.c. 258 by virtue of the § 10(b) exemption.
B. The Town’s Negligent Maintenance of Public Property
The plaintiff alleges that the town was responsible for the maintenance of the lights that the town chose to leave on, and that therefore the town is liable for negligent maintenance of at least one street light because three street lights in a row were off at the time of the accident.
I assume that the streetlights along Main Street are public property, belonging to the town. While G.L.c. 258, §10(j), provides governmental immunity for “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer or any other person acting on behalf of the public employer,” §10(])(3) explicitly excludes from immunity “any claim based upon negligent maintenance of public property.” G.L.c. 258, §10(j)(3).
There do not appear to be decisions that assist materially in determining the scope of this third exception to the exemption from liability set forth in § 10(j). The plain terms of § 10(j)(3) appear to support a conclusion that insofar as the plaintiff claims the town was negligent in maintaining at least one of the three relevant streetlights on Main Street, he is entitled to pursue the claim.[11]
The town argues that the court’s decision in Vaughan v. Eastern Edison Co., supra, 48 Mass.App.Ct. at 226-29, must be read to protect it from liability — that the town is in exactly the same position as the RMLD. The argument fails. As discussed above, the RMLD operates in a manner similar to an investor-owned utility, that is, subject to regulation by the Department of Public Utilities and dependent on its rate payers. The town depends on the taxpayers for financial support. There appears to be no reason why negligently maintained streetlights should be treated differently than any other public property which might be negligently maintained by the town; put another way, the town offers no justification for a determination that it is exempt from liability on claims of negligence relating to the maintenance of street lights even though under § 10(j)(3), the town may be liable for injuries caused in part by other negligently maintained public property.
In my view, the most appropriate resolution of the plaintiff s claim against the town relating to the maintenance of the streetlights is to deny the town’s motion for summary judgment pursuant to Mass.R.Civ.P. 56(f), as the plaintiff has requested. Factual discovery may shed greater light on the contours of this claim, and present a fuller record on which to consider the legal issues raised.
3. The Plaintiffs Motion to Stay
The plaintiff has moved under Mass.R.Civ.P. 56(f) to stay any ruling on the motions for summary judgment pending discovery. I will do so, but only to permit the plaintiff to conduct the discovery necessary to explore the factual questions alluded to in the discussion above. These include: whether the town’s determination to turn off every other light remained a town policy that was in effect at the time of the accident causing the death of the plaintiffs decedent; whether the town or some other entity owns the streetlights on Main Street — are they considered “public property”; whether in December 1997 the RMLD or the town or both bore responsibility in whole or in part for the maintenance and repair of streetlights in the town; and whether there was any defect, obstruction or peculiar conditions requiring lighting in the street at the place where the accident occurred.
ORDER
For the foregoing reasons, the plaintiffs motion to stay a ruling on the motions for summary judgment of the Reading Municipal Light Department and the Town of Reading is allowed. Counsel are to try to agree on a schedule for the limited discovery to be undertaken by the plaintiff in accordance with this memorandum of decision, and to file the same with the court within ten days of receipt of this memorandum of decision and order. If they cannot do so, they are to call the clerk of this session to schedule a conference (probably telephonic) with the court. Following the completion of discovery, a status conference is to be held to determine the future course of action in connection with the two summary judgment motions.

 The plaintiff has mistakenly numbered the last count in his amended complaint as Count IV, with the result that there are two Count IVs.

 Since the RMLD and the town rely on matters outside the complaint, I consider only their motions for summary judgment.

 There appears to be a factual dispute as to whether the town, the RMLD, or both were responsible for the inspection, maintenance and repair of the streetlights. This matter is dealt with below.

 The affidavit of Peter Hechenbleinkner, which provides the information noted above about the town’s decision in 1991 to turn off every other light on Main Street, does not state whether the town’s decision was still operative at the time of the events in December 1997 giving rise to this case. This is an issue the plaintiff may pursue in discovery. However, I have proceeded for now on the assumption that the decision or policy was still in effect. See pp. 6 and note 10 below.

 As discussed more fully below, the complaint ascribes to the town responsibility for, Inter alia, the decision to turn off eveiy other street light (see amended complaint, ¶42), and appears to hold the RMLD responsible only for maintaining ■ the streetlights. (See id., ¶20.)

 “The narrow legal question before us is whether an electric utility company owes a duty of care to a pedestrian injured in an accident caused in part by an inoperative street light that the utility has contracted to maintain.” Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 226 (1999).

 As indicated previously, there appears to be some factual dispute about whether the RMLD or the town was actually charged with maintaining and repairing the light fixtures in December 1997, but for purposes of ruling on the motions for summary judgment, I have assumed that each of these defendants was responsible for maintenance. This will be an issue the plaintiff may pursue in discovery.

 The statement that there is no evidence of any established governmental rule or policy about the number of street lights to remain on is without prejudice to the plaintiffs opportunity to seek discovery on the point, along with the related issue of whether the town’s 1991 determination to turn off every other light was still the policy of the town in December 1997. The legal conclusions discussed here is therefore somewhat hypothetical: they are based on the factual assumption that the turn-off-every-other-light policy was in effect in 1997, and that there is no statute, ordinance, rule or policy prescribing the number of streetlights to remain on. If discovery shows the facts to be otherwise, then the legal determinations obviously would be subject to change.

 In Hill v. Boston, 231 Mass. 372, 373-74 (1918), the court stated, “it is settled in this Commonwealth that the mere failure to provide and maintain proper lights in its streets is not negligence under the highway act, even if the way unlighted be dangerous.” The Appeals Court quoted this sentence in Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 226 (1999), and perhaps was suggesting that a governmental entity at common law could not be held liable for the negligent failure to maintain streetlights. However, it bears pointing out that the “highway act” at issue in Hill v. Boston was a statute that provided a remedy for injuries caused by defects in public ways. Accordingly, it seems appropriate to read the Hill case as simply stating that inoperative streetlights above public ways could not be considered defects in public ways. (See Hill, 231 Mass. at 373-74, where the court states that although a municipality may owe a duty “to erect and maintain barriers and lights to warn and to guard against defects and obstructions in public ways,” it otherwise has no duty under the highway act to provide or maintain streetlights.)
There may also be an argument that under the “public duty rule,” the town cannot be held liable to the plaintiff on account of the inoperative street light. See Dinsky v. Framingham, 386 Mass. 801, 807 (1982). But G.L.c. 258, §10[j], has been called “a statutory public duty rule,” Carleton v. Framing-ham, 418 Mass. 623, 627 (1994), that in effect has supplanted the common law rule. See Brum v. Dartmouth, 428 Mass. 684, 694-95 (1999). If this is so, then the exception stated in §10(j)(3) to the exemption from liability stated in §10(j) itself must be given effect.