White, Catherine A., J.
Pursuant to Mass.R.Civ.P. 56, the parties in the present case move for summary judgment. For the reasons stated below, the parties’ motions are DENIED.

BACKGROUND

The undisputed facts are as follows. G&K, LLC (“G&K”) was the owner of a building at 200 Boylston Street (“the Building”), which it leased as office and retail space. The Building is a four-story commercial building with three stories above-ground and a basement. Sidney Kriensky was a manager for G&K and had an office in the Building.
In 1999, G&K entered into a lease with RPR Restaurant Group, Inc. (“RPR”). RPR leased space on the first floor of the building for a restaurant, and it began construction to adapt the space for its planned use. As a result of the new use in the Building, there was a change in the occupancy of the Building under the Massachusetts State Building Code. The Building Code required that G&K install in the common areas of all four floors of the Building an automatic signaling system, including pull stations, horns, and strobes. In addition, a new fire alarm control panel needed to be installed, into which all of the new fire notification and detection systems in the restaurant and the rest of the Building would be wired. The new alarm system was designed for notification only, not fire suppression.
It was agreed by G&K and RPR that RPR would be responsible for the expense of updating the fire detection systems in the Building. Accordingly, RPR’s general contractor, CCX Corporation d/b/a M&M Engineering (“M&M”) entered into three separate contracts with Keyes North Atlantic Company, Inc. *640 (“Keyes”) in November 1999 for the purchase and installation of the required devices.
In December 1999, Kriensky entered into two contracts with Keyes to install smoke and heat detection alarms, horns, and strobes in Suites 300 and 406 of the Building, for the combined price of $6,975. Under these contracts, Keyes was required to install the new alarms and properly connect and program them with the Building’s new fire alarm panel. In January 2000, Kriensky discovered that Keyes had a payment dispute with M&M and that it had threatened M&M that it would stop all work on the Building. Kriensky, M&M, and RPR had a meeting about the situation, and M&M agreed to make an additional payment to Keyes. Keyes was informed that it would receive a payment forthwith, but it did not return and finish the work at the Building. The Newton Fire Department was not informed that the fire alarm system was not completed.
On February 9, 2000, a fire broke out in Suite 313 on the second floor of the Building. The fire was discovered by Kriensky, who pulled the fire box outside the Building.[2] At 12:06 p.m., the Newton Police Department received a 911 call from a business located in Suite 306 of the Building; less than a minute later, the police received 911 calls from two other occupants of the Building. At approximately 12:07 p.m., the smoke detector inside Suite 300 activated, and at approximately 12:08 the police department received a computerized alarm report of fire on the second floor of 200 Boylston Street. The activation of the smoke detector did not, however, make any noise to notify the occupants of the Building of the fire. Between 12:09 and 12:10, the police department received three more 911 calls from people inside the Building.
When firefighters arrived at the Building at approximately 12:09 pm., they saw a rapidly moving, free-burning fire. The firefighters immediately began search and rescue operations. At 12:15 p.m., heavy black smoke was exiting the windows of the upper floor, and firefighters had to use ladders to rescue people through windows on the upper floor. At about 12:42 p.m., Newton Fire Chief Murphy ordered all firefighters to evacuate the Building. The rear of the Building collapsed at 1:18 p .m. Five people were killed in the fire, and a sixth person later died as a result of injuries sustained in the fire.

DISCUSSION

I.Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Com, 390 Mass. 419,422 (1983); Community Natl Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
In a negligence action, the plaintiff bears the burden of proving every element of its claim: a duty of reasonable care, breach of that duty, and a causal connection between the breach of duty and the loss suffered. Glidden v. Maglio, 430 Mass. 694, 696 (2000); Bernal v. Weitz, 54 Mass.App.Ct. 394, 396 (2002). There can be negligence only where there is a duty to be careful, and the existence of such a duty is a question of law. Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002); Davis v. Westwood Group, 420 Mass. 739, 743 (1995). A defendant under a contractual obligation is liable to third parties who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation. Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368 (1997); Parent v. Stone & WebsterEng’g Corp., 408 Mass. 108, 114 (1990).

II.G&K’s and Kriensky’s Motions for Summary Judgment

As shown during the hearings for the motions for summary judgment, there is at least one issue of material fact in this case, particularly involving Kriensky. Some parties assert that Kriensky attempted to extinguish the fire himself and delayed up to twenty-three minutes before pulling the fire alarm outside the Building, while Kriensky claims that he pulled the alarm as soon as he discovered the fire. This is a material issue of fact, making summary judgment inappropriate for all of G&K and Kriensky’s claims for summary judgment. Mass.R.Civ.P. 56(c); Cassesso, 390 Mass, at 422; Community Nat’l Bank, 369 Mass, at 553.

III.Keyes’ Motions for Summary Judgment A. Motion for Summary Judgment Against the Property Damage and Business Loss Plaintiffs Invoking the Rule of the Case Doctrine (Joined In Full by M&M, G&K, and Kriensky)

Keyes argues that summary judgment should be granted on its claims against the property damage plaintiffs because the court has already granted summary judgment to Keyes in an earlier order. On February 7, 2003, the court ordered that summary judgment be entered in favor of Keyes against Quincy Mutual Fire Insurance Company (“Quincy”), who sought recovery for property damage claims arising out of the fire, on the grounds that Quincy did not have sufficient evidence to demonstrate causation. The rule of the case doctrine is based upon the reluctance of *641 the court “to reconsider questions decided upon an earlier (judgment] or appeal in the same case.” King v. Driscoll, 424 Mass. 1, 7-8 (1996), quoting Peterson v. Hopson, 306 Mass. 597, 599 (1940).
Quincy’s theory was that Keyes’ “failure to complete the common area [fire] notification system substantially caused or contributed to the trapping of victims in the fire, forcing firefighters to make immediate efforts to rescue victims and resulting in a significant delay in controlling the fire which caused the property loss suffered by the Tenants.” Judge Rouse’s Memorandum and Order, Feb. 7, 2003, page 14. The only evidence supporting Quincy’s theory was the testimony of Newton Fire Department Assistant Chief Joseph LaCroix that if the rescue of the victims had not been necessary, the property damage caused by the fire “may have been slightly different, but not that different, I don’t believe.” Id. The court granted summary judgment to Keyes, stating that an expert’s opinion must be expressed in terms of probability, not mere possibility, and cannot be based on speculation or conjecture. Imbibo v. Ahrens, 360 Mass. 847, 847 (1971). Where new evidence is introduced a new situation exists and a judge is not bound to follow a decision previously made on the case on that issue. Goulet v. Whttin Mach. Works, Inc. 399 Mass. 547, 553-54 (1987).
At the present time, the plaintiffs in the property damage cases have offered more evidence to support the theory that Keyes’ failure to complete the fire alarm system caused or substantially caused the property loss suffered by the plaintiffs. In his deposition testimony, plaintiffs’ expert Douglas J. Carpenter states that it is his opinion that if the fire notification system had been operational, the Building’s occupants would have had sufficient time to exit the Building safely, allowing the firefighters to work on fire suppression rather than search and rescue and thereby reducing the property damage suffered by the plaintiffs. Carpenter Deposition page 40-41.
In addition, the plaintiffs have offered the affidavit of William V. Middlemiss, who is currently the Fire Chief for the Town of Lexington. Prior to working for the Town of Lexington, Middlemiss was a Compliance and Enforcement Officer for the Commonwealth of Massachusetts Fire Marshall’s Officer. Middlemiss assisted in the investigation of the fire in the Building, and he believes that had the fire alarm system been operational at the time of the fire, the fire could have been suppressed. Middlemiss opines that if the firefighters had been able to concentrate on the suppression of the fire rather than the search and rescue of people trapped inside the Building, the fire would not have spread as much as it did and would have been suppressed with far less damage to the building.
The plaintiffs have submitted more evidence in opposition to the current summary judgment motions than was provided in the Quincy summary judgment motion over two years ago; the reasoning of the court in allowing the Quincy motion no longer applies to the case as it currently stands. The plaintiffs have submitted enough evidence in their favor to sustain a summary judgment motion; unlike the situation with the Quincy motion for summary judgment, the plaintiffs now have provided the court with more than mere possibility, speculation, or conjecture. The plaintiffs have fulfilled their burden to introduce evidence from which reasonable men could conclude that it is more probable that the loss was caused by the defendant (Keyes) than that it was not. Mullins v. Pine Manor College, 389 Mass. 47, 58 (1983).
For the reasons set forth above, Keyes’ argument that summary judgment should be granted in its favor due to the rule of the case doctrine must be denied.

B. Motion for Summary Judgment on Plaintiffs’ Negligence Claims and Cross Claims and Third-Party Claims Asserted By G&K, Kriensky, and MStM on the Grounds that Keyes Had No Duty to the Other Parties

Keyes argues that it owed the plaintiffs and cross-claim plaintiffs no duty to notify the Newton Fire Department of a temporary work stoppage caused by the payment dispute, and even if it did owe a duty, there is no evidence that notifying the Newton Fire Department would have prevented the injuries suffered by the plaintiffs.
The existence of a duty is an issue of law for the court to decide. Cottam, 436 Mass, at 320. “[A] builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the injuries or damage occurred. Liability will be imposed, however, only if it is foreseeable that the contractor’s work, if negligently done, may cause damage to the property or injury to persons living on or using the premises.” McDonough v. Whalen, 365 Mass. 506, 512 (1974). In Massachusetts, courts have allowed “recovery for the negligent furnishing of services to one not a party to the contract where the defendant knew that the plaintiff would rely on his services.” Rae v. Air-Speed, Inc., 386 Mass. 187, 193 (1982), citing Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967). See also Parent, 408 Mass. at 114.
In Banaghan v. Dewey, 340 Mass. 73 (1959), the plaintiffs were injured when an elevator malfunctioned and fell to the bottom of the elevator shaft. The plaintiffs, who were tenants of the building and the elevator operator, sued the company that had contracted with the building’s landlord to maintain the elevator. The Court held the maintenance company liable for the plaintiffs’ injuries, stating
[the elevator maintenance company’s] obligation is measured by the terms of its contract with [the landlord], and if thereby it was under a duty to *642 maintain the elevator in safe condition or to inspect it for defects, it is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation . . . The plaintiffs, tenants in the building and the elevator operator, were unquestionably within the class of persons likely to be injured by its negligence.
Banaghan, 340 Mass, at 80.
There are limits, however, on the extent to which courts in Massachusetts will hold a party liable for injuries to third parties. In Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 225 (1999), the plaintiff was struck by a car when crossing the street in a crosswalk; neither of the streetlights on the opposite side of the street from where the plaintiff was crossing was working at the time of the accident. Eastern Edison owned and installed the streetlights. Id. The plaintiff sued Eastern Edison, but the Massachusetts Appeals Court refused to hold Eastern Edison liable for the plaintiffs injuries. In its reasoning, the Appeals Court expressed concern about “the public policy implications of expanding the duties of utilities to individual members of the general public[.]” Id. at 227. The Appeals Court defined duty as the “allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.” Vaughan, 48 Mass.App.Ct. at 229, quoting White v. Southern Cal Edison Co., 25 Cal.App.4th 442, 447 (1994). In essence, the Appeals Court decided that holding Eastern Edison liable for the plaintiffs injuries imposed too great a burden on the utility company.
Keyes had a duty to the tenants of the Building. Unlike Eastern Edison in Vaughn, Keyes is a private company rather than a public utility. Keyes is similar to the defendants in Banaghan and McDonough, an elevator maintenance company and a septic system designer and installer. Like the defendants in Banaghan and McDonough, Keyes contracted with private parties. While installing fire detection and alarm systems is related to public safety, Keyes’ business provides a service that benefits particular parties, not to the general public.
Following the reasoning set out in cases such as Banaghan, McDonough and Rae, Keyes had a duty to the plaintiffs. While the plaintiffs were not parties to the contracts with G&K and M&M, the plaintiffs were tenants in the Building who would foreseeably be exposed to danger if Keyes failed to complete its contract obligations. Banaghan, 340 Mass, at 80. At the time of the fire, Keyes had installed the pull boxes and the strobes for the new fire alarm system but the final wiring had not yet been completed. Massachusetts courts allow “recoveiy for the negligent furnishing of services to one not a party to the contract where the defendant knew that the plaintiff would rely on his services.” Rae 386 Mass, at 193, citing Craig, 351 Mass, at 501. See also Parent, 408 Mass, at 114. To a layperson, the pull boxes and strobes installed by Keyes in the Building gave the impression that the Building’s fire alarm system had been updated and that one could therefore rely on it.
Duty is “allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.” Vaughan, 48 Mass.App.Ct. at 229, quoting White, 25 Cal.App. 4th at 447. Imposing a duty on Keyes to finish their contractual obligations or contact the appropriate authorities is not an onerous burden. In the present case, the injuries suffered by the plaintiffs are the foreseeable result of the Building lacking a fully operational fire alarm system. In light of the catastrophic losses suffered by the plaintiffs, Keyes’ burden to complete the work or contact the Newton Fire Department is minimal.
Keyes argues that even if it had a duty, informing the Newton Fire Department about the work stoppage would not have made any difference. The parties have submitted extensive depositions relating to whether the property damage might have been less severe if the fire department could have immediately started fighting the fire rather than rescuing people in the building, raising a material issue of fact which is properly left for a jury to decide. Cassesso, 390 Mass. at 422 Community Nat’l Bank, 369 Mass, at 553.

IV. Lazar Lowinger’s Motion for Separate and Final Judgment as Defendant-In-Counterclaim A. Supplemental Facts

Plaintiff Lazar Lowinger (“Lowinger”), an attorney, was a tenant on the fourth floor of the Building. Lowinger was not in the Building on the day of the fire, but his law office and its contents were completely destroyed in the fire. G&K and Kriensky contend that one of Lowinger’s filing cabinets obstructed a stairway in the Building, preventing some people from exiting the Building during the fire. On April 4, 2003, G&K and Kriensky filed counterclaims against Lowinger for negligence, gross negligence, contribution, indemnification, and breach of contract. On March 8, 2004, Lowinger filed a motion for summary judgment on G&K and Kriensky’s counterclaims, and on December 9, 2004, Lowinger filed a motion to consolidate his case with that of the other plaintiffs in the present action. On January 10, 2005, Superior Court Justice H.J. Smith, Jr. allowed Lowinger’s motion for summary judgment on all five counterclaims, and on February 3, 2005, Superior Court Justice Bonnie H. MacLeod allowed Lowinger’s motion to consolidate.

B. Lowinger’s Motion for Final and Separate Judgment

At the time Lowinger’s case was consolidated with the present case, Lowinger had been granted summary judgment on G&K and Kriensky’s counterclaims. The court sees no need at this time to enter separate and final judgment for Lowinger on counter *643 claims that no longer exist. Lowinger’s motion for separate and final judgment must therefore be denied.

ORDER

For the reasons set forth above, it is hereby ORDERED that defendants’ motions for summary judgment are DENIED and plaintiff Lowinger’s motion for final and separate judgment is DENIED.
APPENDIX OF CONSOLIDATED CASES
MICV2000-03660
ESTATE OF GERALD KAPLAN and others[3] v. CCX CONSTRUCTION CORP., d/b/a M&M ENGINEERING AND CONSTRUCTION and others[4]
MICV2000-05840
QUINCY MUTUAL FIRE INSURANCE CO. v. G&K, LLC a/k/a GOODE & KRIENSKY, LLC and others[5]
MICV2001-00380
GARY LICHTENSTELN and others[6] v. GOODE & KRIENSKY, LLC a/k/a G&K, LLC and others[7]
MICV2002-00598
BIOMEDICAL MODELING, INC. v. KEYES NORTH ATLANTIC CO., INC. and others[8]
MICV2002-01478
TRAVELERS INDEMNITY COMPANY OF ILLINOIS and another[9] v. G&K, LLC a/k/a GOODE & KRIENSKY, LLC and others[10]
MICV2002-03529
H.E. GUSTAFSON, INC. d/b/a ELIZABETH GRADY SKIN CARE SALON v. GOODE & KRIENSKY, LLC a/k/a G&K, LLC and others[11]
MICV2003-00482
MAGNA CARTA COMPANIES v. G&K, LLC a/k/a GOODE & KRIENSKY, LLC and others[12]
MICV2003-00358
LAZAR LOWINGER v. GOODE & KRIENSKY, LLC a/k/a G&K, LLC and others[13]

There seems to be a dispute about Kriensky’s actions after discovering the fire. Some parties claim that Kriensky initially attempted to extinguish the fire himself and delayed contacting the Newton Fire Department for up to twenty-three minutes. Other parties, including Kriensky and G&K, claim that he contacted the NFD immediately upon discovering the fire.

Adrienne Kaplan, Matthew Kaplan, and Jeffrey Kaplan, Individually and as Administrators of the Estate of Gerald Kaplan; Shannon Brady, Michael Norton, and Sean Brady, Individually; Shannon Brady as Administratrix of the Estate of Lynne Brady; Madeline H. Lewis, Individually and as Executrix of the Estate of Virginia B. Lewis; Madeline H. Lewis and Albert Newell as Administrators of the Estate of Robert L. Lewis; Karen J. Vail (deceased); Sharyn U. Stulin, Individually; Jeffrey Stulin and Rita Stulin, Individually and as Administrators of the Estate of David Stulin.

FleetBoston Financial Corp. (Trustee Defendant); G&K, LLC a/k/a Goode & Kriensky, LLC; Keyes North Atlantic Co., Inc.; Sidney Kriensky; S.G. Cowen (Trustee Defendant); and Seaco Insurance Co. (Reach and Apply Defendant).

CCX Constmction Corp. d/b/a M&M Constmction Corp. d/b/a M&M Engineering d/b/a M&M Engineering & Con-stmction; Keyes North Atlantic Co., Inc.; Sidney Kriensky; and Seaco Insurance Co. (Reach and Apply Defendant).

Shoshanna Lichtenstein and Jay Lennad Furs, Inc.

Sidney Kriensky; CCX Constmction Corp. d/b/a M&M Engineering [& Constmction]; Keyes North Atlantic Co.; and Seaco Insurance Company (Reach and Apply Defendant).

CCX Constmction Corp. d/b/a M&M Engineering d/b/a M&M Engineering & Constmction; G&K, LLC a/k/a Goode & Kriensky; and Sidney Kriensky.

Charter Oak Fire Insurance Company

Sidney Kriensky; CCX Constmction Corp. d/b/a M&M Engineering d/b/a M&M Engineering & Constmction; Keyes North Atlantic Co.; and Seaco Insurance Company.

Sidney Kriensky; CCX Constmction Corp. d/b/a M&M Engineering d/b/a M&M Engineering & Constmction; Keyes North Atlantic Co.; and Seaco Insurance Company (Reach and Apply Defendant).

Sidney Kriensky; CCX Constmction Corp. d/b/a M&M Engineering & Constmction; and Keyes North Atlantic Co.

Sidney Kriensky and Seaco Insurance Company (Reach and Apply Defendant).