Agnes, Peter W., J.
This case arises from injuries that plaintiff Stephen Webb (“Webb”) sustained when defendant Vincent Phillips’s (“Phillips”) vehicle collided with him while he was performing traffic duty for the Millbuiy Police Department. In addition to his claims against Phillips, Webb alleges that the Millbuiy Lions Club (“Lions Club”), and its members named as defendants herein, were negligent or reckless in failing to direct Phillips away from the congested center of the Town of Millbuiy, and that Webb’s injuries are a direct and proximate result of that failure.
This matter is currently before the court on the Lions Club’s motion to dismiss for failure to state a claim and Webb’s cross motion for partial summary judgment to preclude the Lions Club from asserting a charitable cap defense. The Lions Club’s motion refers to matters outside the pleadings, and as such, the court will treat it as a Rule 56 motion for summaiy judgment.[3] After consideration and for the reasons set forth below, the Lions Club’s motion for summaiy judgment is ALLOWED. The entry of summaiy judgment in favor of the Lions Club makes Webb’s cross motion for partial summaiy judgment moot, and it is therefore DENIED.
BACKGROUND
The court summarizes the relevant facts, which are taken from the summaiy judgment record in the light most favorable to the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
Webb, a police officer with the Millbuiy Police Department, was injured on July 4, 2005, when one of the defendants, Vincent Phillips, struck Webb with his car while Webb was on duty directing pedestrian traffic. Phillips was returning home from a Fourth of July carnival and fireworks display sponsored by the Lions Club. Prior to the collision, Phillips had turned right out of the parking lot of the Cordis Mills apartment complex and proceeded on Canal Street toward the center of Millbuiy, where Webb was stationed. The Lions Club controlled the Cordis Mills parking lot, which it used for carnival parking. The Millbuiy Police Department had made it clear to the Lions Club that motorists leaving the lot should be directed to the left, because turning right would place the motorists on a collision course with a throng of pedestrians leaving the carnival. In years past, the Lions Club had stationed a member at the exit to the Cordis Mills parking lot to assist police in marshalling traffic away from the center of Millbuiy. It is not clear from the record, however, precisely what role, if any, the Lions Club agreed to play in assisting police with traffic control on July 4, 2005.
Webb alleges that the Lions Club had a duty to direct vehicle traffic out of the Cordis Mills parking lot and away from the center of town. He further alleges that a Lions Club member — defendant John Doe in this action — either was stationed or should have been stationed at the exit of the Cordis Mills parking lot, and, in any event, failed to properly direct Phillips out of the parking lot and away from the center of town. As a result, Webb demands unspecified damages and costs on the grounds that Millbuiy Lions Club was negligent or reckless in fulfilling its duty, and that said conduct proximately caused his injuries.[4] In response, the Lions Club contends that: (1) it had no legal duty to ensure traffic safely on a public way: (2) the collision between Phillips and Webb was unforeseeable; and (3) at most, its actions were a condition, not a cause, of the accident.
DISCUSSION
I. Summaiy Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A parly moving for summaiy judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact." Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Bailey, 386 Mass. at 370-71.
*62 II. Analysis of Lions Club’s Motion for Summary Judgment
1. Lions Club’s Duty to Direct Traffic Out of Cordis Mills
‘To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.” Jupia v. Kask, 447 Mass. 141, 146 (2006). Whether a duty exists is a question of law. Id. at 143.
The Lions Club maintains that it was not responsible for controlling Canal Street on the night of the accident, and that, as a matter of law, it could not have assumed a legal duty to pedestrians or drivers on the public way by agreeing to assist police with traffic control.
“[A] duty of care may arise from the right to control land, even where the person held to such a duty does not own the land in question.” Davis v. Westwood Group, 420 Mass. 739, 744-45 (1995). As a matter of social policy, however, a private entity cannot assume control of a public way. Id. at 747, citing Ferreira v. Strack, 636 A.2d 682, 688 (R.I. 1994) (“[because] any attempt on the part of a private person gratuitously to assume control of a public highway would be contra to public policy... no such duty [can] be assumed by an abutting landowner”). There is no reason why the policy governing state-owned highways should differ for roads owned and maintained by municipalities. The Lions Club, therefore, cannot be held liable for Webb’s injuries under a theory that it controlled Canal Street, where Webb was struck.
Assuming that the Lions Club controlled the Cordis Mills parking lot on July 4, 2005, its duty to patrons would require only that it use reasonable care in its efforts to direct motorists out of the parking lot and toward the public street. From there, it is up to the municipality to regulate the flow of traffic as it sees fit. Without something more, the Lions Club cannot be said to owe a duty to guide traffic in any particular direction.
In an attempt to supply that missing ingredient, Webb argues that the Lions Club voluntarily assumed a duty to steer motorists left on Canal Street pursuant to a standing agreement with the Millbury Police Department. A person or entity may, indeed, assume a duty that otherwise would not exist. Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002). Accordingly, “[i]f a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking.” Id. at 323-24, quoting Thorson v. Mandell, 402 Mass. 744, 748 (1988).
As indicated above, the Lions Club, as a private entity, could not have assumed a duly to control the Canal Street/Cordis Mills intersection itself. See Davis, 420 Mass, at 747. Webb suggests, nevertheless, that the Lions Club assumed a duly to help facilitate the flow of traffic away from the center of Millbury when it agreed to assist Millbury police by directing motorists to turn left as they exited the Cordis Mills parking lot. Webb advances two alternate theories of breach with respect to this alleged arrangement: either (1) the Lions Club neglected to station someone at the Cordis Mills exit; or (2) a Lions Club member actually was stationed at the exit, and that member negligently instructed Phillips to turn right. In other words, Webb has not presented evidence to determine precisely what role, if any, the Lions Club played in directing traffic the night he was struck, so he alleges both misfeasance and nonfeasance. The Lions Club, meanwhile, points to evidence that a police officer, not a Lions Club member, was present at the Cordis Mills exit on July 4, 2005, and that the Lions Club otherwise assumed no legal obligation to travelers on the public streets. The burden on summary judgment has thus shifted to Webb to allege specific facts that would create an issue of material fact as to the Lions Club’s liability for Webb’s injuries. See Pederson, 404 Mass. at 17.
With respect to Webb’s misfeasance theory, his argument is essentially that a Lions Club member actually directed Phillips to turn right onto Canal Street, despite knowing that it would be dangerous to send vehicles in that direction, which was teeming with pedestrian traffic. Massachusetts has adopted the Restatement’s position on assumption of duty.[5] Under that rule, if a Lions Club member did, in fact, instruct Phillips to turn right despite a clear directive not to do so, then it might indeed have increased the risk of a collision with persons on the crowded street, including Webb. However, this theory is premised on Webb’s ability to establish at trial that, on July 4, 2005, there actually was a Lions Club member directing traffic at the Cordis Mills exit.
A plaintiff cannot defeat summary judgment by resort to evidence that would be inadmissible at trial. See Madsen v. Erwin, 395 Mass. 715, 721 (1985). There is nothing in the record to support the inference that a Lions Club member was actually stationed at the Cordis Mills exit on the night in question. To the contrary, the Lions Club has submitted affirmative evidence, through Phillips’s deposition testimony, that a police officer directed traffic at the Canal Street/Cordis Mills intersection on the night of the accident. Webb has attempted to establish a triable issue by suggesting that Phillips could have mistaken a Lions Club member carrying an orange flashlight cone for a police officer. Webb’s only support for this theory, however, is the Millbury police chiefs testimony that no officer was specifically assigned to the intersection that night.
Contrary to Webb’s assertions, the fact that a police officer was not dispatched to the scene does not itself *63 permit the inference that a Lions Club member stepped in to fill the void. Nor does the Lions Club president’s testimony that a member staffed the Cor-dis Mills parking lot in prior years permit the inference that a member was there on the night in question. Viewing the evidence in the light most favorable to Webb, the court looks to whether there is “any combination of circumstances . . . from which a reasonable inference could be drawn in favor of the plaintiff.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). Reasonable inferences are those that are based on “probabilities, rather than possibilities,” and “not the result of‘mere speculation and conjecture.’ ” Id., quoting Alholm v. Wareham, 371 Mass. 621, 627 (1976). Based on the record before the court, a finding of fact that a Lions Club member manned the Cordis Mills parking lot on July 4, 2005, would be pure conjecture. The mere assertion that a Lions Club member may have been present, “absent factual material on which the assertion might be proved, is not sufficient to defeat summary judgment.” Massachusetts Mun. Whol El Co. v. Springfield, 49 Mass.App.Ct. 108, 113 (2000).
Turning to Webb’s nonfeasance theory, to the extent that Webb predicates his claim on the allegation that the Lions Club agreed to direct traffic and then negligently failed to provide a volunteer to carry out that promise, he cannot prevail. Restatement (Second) of Torts §324A, imposing liability to third persons for negligent performance of an undertaking, parallels §323, which Webb cites in his brief as a basis for finding that the Lions Club assumed a legal duty by agreeing to assist the police with traffic control. See Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 230-31 (1999). These guidelines, which impose a duty of care on “Good Samaritans,” are met “only when the defendant’s actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially.” Id., quoting Turbe v. Government of Virgin Islands, 938 F.2d 427, 432 (3rd Cir. 1991). In other words, “the defendant’s negligent performance must somehow put the plaintiff in a worse position than if the defendant had never begun the performance.” Id. Even adopting Webb’s theoiy of negligent omission, the Lions Club’s total failure to provide a volunteer to shepherd traffic in a particular direction would not have created a greater risk to pedestrians than that which would have existed if the Lions Club had not agreed to help direct traffic in the first place. See Vaughan, 48 Mass.App.Ct. at 231 (citing proposition that §324A requires “sins of commission rather than omission”).
As a final matter, the court acknowledges that if a plaintiff cannot show increased risk of harm, he may yet be able to meet the requirements of §324A by showing detrimental reliance. See id. at 230, insofar as Webb contends that Millbuiy police reasonably relied on the Lions Club to serve as the last bastion of pedestrian safety at the Canal Street/Cordis Mills intersection, this court is not persuaded that the Lions Club’s vague discussions with the police department could reasonably have prompted the police to surrender what is essentially a municipal function.[6] In fact, Millbuiy’s police chief testified that he strategically placed safety officers at various locations outside the carnival grounds on July 4, 2005, and the plaintiff himself was stationed at ground zero as far as foot traffic is concerned. This suggests that the police did not completely forego other protective measures in response to the Lions Club’s representations that it would assist with traffic control, such that that they could be said to have reasonably relied on the Lions Club to the detriment of others. See id. at 231.
As there is no genuine issue of material fact that would impact this court’s determination that the Lions Club owed no legal duty to Webb, summary judgment in favor of the Lions Club and its members is appropriate. Further, as the Lions Club’s lack of duty disposes of Webb’s claims against it, the court does not address the Lions Club’s other arguments. Because the court now enters summary judgment in favor of the Lions Club, Webb’s cross motion for partial summary judgment is moot.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss, treated as a motion for summary judgment, is ALLOWED. Because it is now moot, the plaintiffs cross motion for partial summary judgment is DENIED.

 See Mass.R.Civ.P. 12(b)(6). Webb’s counsel suggested that the court consider the motion as one for summary judgment and has framed his arguments accordingly. Therefore, Webb has constructive notice of the conversion, as required by Rule 12(b). See White v. Peabody Constr. Co., Inc., 386 Mass. 121, 127-28(1982).

 His wife, Debra Webb, demands judgment for loss of consortium on the same facts.

 See Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 230 (1999), applying Restatement (Second) of Torts §324A (1965). Section 324A provides, in relevant part, that “(o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person ... is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if. . . his failure to exercise such care increases the risk of such harm.”

 Millbuiy’s police chief testified that he communicated to the Lions Club his expectation that the Lions Club would be responsible for directing traffic out of the Cordis Mills parking lot and away from the center of town. Ex. A, Handfield Depo. at 12. The Lions Clubs carnival chairman testified that, although Lions Club members were aware of Chief Handfield’s plan to direct traffic away from the center of town, the Lions Club’s only responsibility was to wave cars down the drive *64 way; the Millbury police were responsible for directing traffic out to the street. Ex. E, Marlborough Depo. at 14-15. Though the conflicting testimony may create an issue of fact as to precisely what role each pany expected the other to play in directing traffic, it has no bearing on the legal determination that the Lions Club did not assume a duty to ensure that travelers on Canal Street would be safe from vehicles exiting Cordis Mills.